Taylor, C. J.
The issue in this case is whether a notice provision applicable to the defective highway exception to governmental immunity, MCL 691.1404(1), should be enforced as written. This statute provides in pertinent part:
As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred,... shall serve a notice on the governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.
We conclude that the plain language of this statute should be enforced as written: notice of the injuries sustained and of the highway defect must be served on the governmental agency within 120 days of the injury. This Court previously held in Hobbs v Dep’t of State Hwys, 398 Mich 90, 96; 247 NW2d 754 (1976), and Brown v Manistee Co Rd Comm, 452 Mich 354, 356-357; 550 NW2d 215 (1996), that absent a showing of actual prejudice to the governmental agency, failure to comply with the notice provision is not a bar to claims filed pursuant to the defective highway exception. Those cases are overruled.
Accordingly, the order of the trial court denying summary disposition to defendant on the basis of Hobbs/Brown is reversed, the judgment of the Court of Appeals affirming the trial court’s order is also reversed, and the case is remanded to the trial court for the entry of an order granting defendant summary disposition because plaintiff failed to provide notice *201 within 120 days “[a]s a condition to any recovery” for injuries she claims she sustained by reason of a defective highway.
i. facts and procedural history
On February 6, 2001, plaintiff Joan Rowland fell and was injured while crossing Jennings Street at its intersection with Main Street in Northfield Township in Washtenaw County. Plaintiff alleged that she tripped and fell on “broken, uneven, dilapidated, depressed and/or potholed areas.”
Plaintiff served her notice on defendant Washtenaw County Road Commission on the 140th day after the accident and subsequently filed a lawsuit against defendant asserting the applicability of the defective highway exception to governmental immunity. MCL 691.1402. Defendant road commission filed an answer and affirmative defenses that raised MCL 691.1404 (failure to serve notice within 120 days) as a defense. Defendant subsequently moved for summary disposition pursuant to MCR 2.116(C)(7) (immunity granted by law) and 2.116(0(10) (no genuine issue of material fact), arguing, among other things, that plaintiffs failure to comply with MCL 691.1404(1) entitled it to summary disposition.
Relying on Hobbs/Brown (defendant must show prejudice before the statute can be enforced) the trial court determined that there was a genuine issue of material fact concerning whether defendant had shown prejudice and thus denied the road commission’s motion for summary disposition.
The Court of Appeals affirmed the order of the trial court.[1] Defendant urged the panel to disregard the *202 Hobbs and Brown construction of MCL 691.1404 on the basis that those cases were wrongly decided. The Court of Appeals, however, noted that it was duty-bound to follow this Court’s construction of MCL 691.1404 and that the decisions were binding unless the Supreme Court overruled them.
The road commission filed an application for leave to appeal, which this Court granted.[2]
II. STANDARD OF REVIEW
This Court reviews de novo a trial court’s decision to deny a motion for summary disposition. Nastal v Henderson & Assoc Investigations, Inc, 471 Mich 712, 720; 691 NW2d 1 (2005). Questions of statutory interpretation are also reviewed de novo. Id. When construing a statute, this Court’s primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. When the language is unambiguous, we give the words their plain meaning and apply the statute as written. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999).
III. ANALYSIS
a. GOVERNMENTAL IMMUNITY AND THE DEFECTIVE HIGHWAY EXCEPTION
It is well understood, and not challenged here, that governmental agencies, with a few exceptions, are generally statutorily immune from tort liability. The governmental tort liability act (GTLA), MCL 691.1401 et seq., broadly shields a governmental agency from tort liability “if the governmental agency is engaged in the exercise or discharge of a governmental function.” MCL *203 691.1407(1). The act enumerates several exceptions to governmental immunity that permit a plaintiff to pursue a claim against a governmental agency.[3]
[4]Our decision in this case requires us to examine MCL 691.1404. As previously indicated, the statute provides:
As a condition to any recovery for injuries sustained by reason of any defective highway, the injured person, within 120 days from the time the injury occurred, except as otherwise provided in subsection (3)[4] shall serve a notice on the governmental agency of the occurrence of the injury *204 and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant. [MCL 691.1404(1).]
Plaintiff, having served her notice 140 days after her fall, acknowledges that she did not serve a notice on the road commission within 120 days of her accident. Given that the plain language of the statute requires such notice as a condition for recovery for injuries sustained because of a defective highway, one merely reading the statute might assume that plaintiffs complaint would have been dismissed. Because this Court’s decisions in Hobbs and Brown engrafted an actual prejudice component onto the statute, the trial court could not dismiss the case.[5] It is valuable in considering the defensibility of this interpretation of the statute to first survey this Court’s cases concerning notice provisions, including the provision at issue here.
*205 b. HISTORY of THIS COURT’S CASELAW INVOLVING NOTICE STATUTES
From its earliest years this Court, evidently detecting no constitutional impediments, if indeed any were even urged, enforced governmental immunity mandatory notice provisions according to their plain language. See, e.g., Davidson v City of Muskegon, 111 Mich 454; 69 NW 670 (1897); Holtham v Detroit, 136 Mich 17; 98 NW 754 (1904); Wilton v Detroit, 138 Mich 67; 100 NW 1020 (1904); Barribeau v Detroit, 147 Mich 119; 110 NW 512 (1907); McAuliff v Detroit, 150 Mich 346; 113 NW 1112 (1907) ; Ridgeway v Escanaba, 154 Mich 68; 117 NW 550 (1908) ; Moulter v Grand Rapids, 155 Mich 165; 118 NW 919 (1908); Northrup v City of Jackson, 273 Mich 20; 262 NW 641 (1935); Sykes v Battle Creek, 288 Mich 660; 286 NW 117 (1939); Trbovich v Detroit, 378 Mich 79; 142 NW2d 696 (1966); Morgan v McDermott, 382 Mich 333; 169 NW2d 897 (1969).
The leading cases upholding notice provisions are Moulter, Trbovich, and Morgan. In Moulter, this Court held that the right to recover for injuries arising from the lack of repair to sidewalks, streets, highways, and so forth, was purely statutory and that it was discretionary with the Legislature whether it would confer upon injured persons a right of action. Moreover, any rights given to sue the government could be subject to limitations the Legislature chose. The implicit theory was that such notice provisions were economic or social legislation and that, because the Legislature had a rational basis for the notice requirements — the most obvious being facilitating meaningful investigations regarding the conditions at the time of injury and allowing for quick repair so as to preclude other accidents— the statutes were constitutionally permissible. Further, in Trbovich the Court indicated that for the Court to *206 not accede to the Legislature’s authority in this fashion would be to unconstitutionally usurp legislative authority. Finally, in Morgan the Court reaffirmed that the then 60-day notice requirement in defective highway cases was simply a condition of liability and that, unless it was fulfilled, there was no liability.[6]
As of 1969, therefore, the enforceability of notice requirements and the particular notice requirements in governmental immunity cases was well settled and had been enforced for almost a century. In 1970, however, there was an abrupt departure from these holdings in the Court’s decision in Grubaugh v City of St Johns, 384 Mich 165; 180 NW2d 778 (1970). In Grubaugh the Court discerned an unconstitutional due process deprivation if plaintiffs suing governmental defendants had different rules than plaintiffs suing private litigants. As a result, Moulter was not followed.[7]
Two years later, in Reich v State Hwy Dep’t, 386 Mich 617; 194 NW2d 700 (1972), the Court took Grubaugh one step further and held that an earlier version of MCL 691.1404, which included a 60-day notice provision, was unconstitutional, but this time because it violated equal protection guarantees. The analysis again was that the constitution forbids treating those injured by governmental negligence differently from those injured by a *207 private party’s negligence. Leaving aside the unusual switch from one section of the constitution to another to justify an adjudication of unconstitutionality, this claim is simply incorrect. Private and public tortfeasors can he treated differently in the fashion they have been treated here by the Legislature. It does not offend the constitution to do so because with economic or social regulation legislation, such as this statute, there can be distinctions made between classes of persons if there is a rational basis to do so. As we explained in Phillips v Mirac, Inc, 470 Mich 415, 431-433; 685 NW2d 174 (2004), legislation invariably involves line drawing and social legislation involving line drawing does not violate equal protection guarantees when it has a “rational basis,” i.e., as long as it is rationally related to a legitimate governmental purpose. The existence of a rational basis here is clear, as we will discuss more fully, but even the already cited justification, that the road be repaired promptly to prevent further injury, will suffice.
Considering the same point, Justice BRENNAN in his dissent in Reich pithily pointed out the problems with the majority’s analysis:
The legislature has declared governmental immunity from tort liability. The legislature has provided specific exceptions to that standard. The legislature has imposed specific conditions upon the exceptional instances of governmental liability. The legislature has the power to make these laws. This Court far exceeds its proper function when it declares this enactment unfair and unenforceable. [386 Mich at 626.]
The next year, in Carver v McKernan, 390 Mich 96; 211 NW2d 24 (1973), the Court retreated from Grubaugh and Reich and, in a novel ruling, held that application of the six-month notice provision in the Motor Vehicle Accident Claims Act (MVACA), MCL
*208 257.1118, was constitutional, and that the provision was thus enforceable, only where the failure to give notice resulted in prejudice to the party receiving the notice, in that case the Motor Vehicle Accident Claims Fund (MVACF). The reasoning was that while some notice provisions may be constitutionally permitted some may not be, depending on the purpose the notice serves. Thus, if notice served a permissible purpose, such as to prevent prejudice, it passed constitutional muster. But, if it served some other purpose (the Court could not even imagine any other) then the notice required by the statute became an unconstitutional legislative requirement. Thus, the Court concluded that in order to save the statute from being held unconstitutional, it had to allow notice to be given after six months and still be effective unless the governmental agency, there the MVACF, could show prejudice. Whatever a court may do to save a statute from being held to be unconstitutional, it surely cannot engraft an amendment to the statute, as was done in Carver. See, e.g., North Ottawa Community Hosp v Kieft, 457 Mich 394, 408 n 14; 578 NW2d 267 (1998). Notwithstanding these problems, they went unnoticed and the rule now was “only upon a showing of prejudice by failure to give such notice, may the claim against the fund be dismissed.” Carver, 390 Mich at 100.
Returning to the Carver approach in 1976, this Court in Hobbs, 398 Mich at 96, held regarding the notice requirement in the defective highway exception to governmental immunity:
The rationale of Carver is equally applicable to cases brought under the governmental liability act. Because actual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision, absent a showing of such prejudice the *209 notice provision contained in [MCL 691.1404] is not a bar to claims filed pursuant to [MCL 691.1402].
Finally, in 1996, in Brown, this Court reassessed the propriety of the Hobbs decision and declined to overrule it on the basis of stare decisis and legislative acquiescence.[8]
*210 c. HOBBS AND BROWN WERE WRONGLY DECIDED AND POORLY REASONED
The simple fact is that Hobbs and Brown were wrong because they were built on an argument that governmental immunity notice statutes are unconstitutional or at least sometimes unconstitutional if the government was not prejudiced. This reasoning has no claim to being defensible constitutional theory and is not rescued by musings to the effect that the justices “ ‘look askance’ ” at devices such as notice requirements, Hobbs, 398 Mich at 96, quoting Carver, 390 Mich at 99, or the pronouncement that other reasons that could supply a rational basis were not to be considered because in the Court’s eyes the “only legitimate purpose” of the notice provisions was to protect from “actual prejudice.” Hobbs, 398 Mich at 96.
Perceiving the error of the majority, Justice RILEY explained in her dissent in Brown that this notice statute is social legislation that is constitutional because it has a rational basis. She stated:
I note that “[w]hen scrutinizing economic and social legislation, this Court applies the rational basis standard of review.” Downriver Plaza Group v Southgate, 444 Mich *211 656, 666; 513 NW2d 807 (1994). The only inquiry, then, is whether this social legislation creating a 120-day notice requirement has a rational basis.
This particular legislation passes the minimal rational basis test, and the Court in Hobbs was without authority to require a showing of prejudice in each and every case. Notice provisions rationally and reasonably provide the state with the opportunity to investigate and evaluate a claim. [452 Mich at 370.]
Because the statute was constitutional, no “saving construction” was necessary or allowed. Thus, the en-grafting of the prejudice requirement onto the statute was entirely indefensible.
Further, in the search for a legitimate purpose for notice provisions, the holding in Ridgeway v Escanaba, 154 Mich 68, 72-73; 117 NW 550 (1908), is also instructive. It was there that this Court gave a full-throated statement of the purpose it discerned:
We must say that the legislature intended to give to defendants in such cases some protection against unjust raids upon their treasuries by unscrupulous prosecution of trumped-up, exaggerated, and stale claims, by requiring a claimant to give definite information to the city or village against whom it is asserted, at a time when the matter is fresh, conditions unchanged, and witnesses thereto and to the accident within reach. It is a just law, necessary to the protection of the taxpayer, who bears the burden of unjust judgments. It requires only ordinary knowledge and diligence on the part of the injured and his counsel, and there is no reason for relieving them from the requirements of this statute that would not be applicable to any other statute of limitation.
It is also useful to consider as possible legislative reasons for the notice statute the purposes discussed in the consolidated cases of Lisee v Secretary of State and Howell v Lazaruk, 388 Mich 32; 199 NW2d 188 (1972). *212 In those cases, while the majority suggested that the purpose of the notice statute was to afford an opportunity to investigate a claim and to determine the possible liability of the MVACF, Justices BRENNAN and BLACK dissented in part, pointing out additional reasons, beyond those mentioned by the majority, for requiring notice. These included allowing time for creating reserves for the Fund, reducing the uncertainty of the extent of future demands, or even to force the claimant to an early choice regarding how to proceed. Because these apply in the context of the MVACF, they could also have been in the minds of the Legislature at the time MCL 691.1404 was enacted.
These likely or even possible reasons cited above must be considered as supplying the rational basis that assures constitutionality, because, as Justice CAVANAGH pointed out in Brown, supra at 362, reciting the venerable rule in such matters, it is our duty in rational basis cases to find constitutionality if “ 'any state of facts either known or which could reasonably be assumed affords support’ ” for the statute. (Citation omitted.) It is the case then that there is unquestionably now, and there was then, a “rational basis” for finding, even as Justice RILEY did earlier, a rational basis for this statute and the distinctions it draws.
Moreover, common sense counsels that inasmuch as the Legislature is not even required to provide a defective highway exception to governmental immunity, it surely has the authority to allow such suits only upon compliance with rational notice limits. As this Court stated in Moulter:
It being optional with the legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose. [155 Mich at 168-169.]
*213 In sum, Moulter and the other cases previously cited were decided in accordance with the constitution. The notice provision passes constitutional muster. We reject the hybrid constitutionality of the sort Carver, Hobbs, and Brown engrafted onto our law.[9] In reading an “actual prejudice” requirement into the statute, this Court not only usurped the Legislature’s power but simultaneously made legislative amendment to make what the Legislature wanted — a notice provision with no prejudice requirement — impossible. Hobbs and Brown are remarkable in the annals of judicial usurpation of legislative power because they not only seized the Legislature’s amendment powers,[10] but also made *214 any reversing amendment by the Legislature impossible. Nothing can be saved from Hobbs and Brown because the analysis they employ is deeply flawed. [11] Accordingly, we must next consider if considerations of stare decisis should cause us to retain this poorly reasoned precedent.
IV STARE DECISIS
In determining whether to overrule a prior case, this Court first considers whether the earlier case was wrongly decided. Robinson v Detroit, 462 Mich 439, 463-468; 613 NW2d 307 (2000).[12] As we have previously explained, we are persuaded that Hobbs and Brown *215 were wrongly decided.[13] Robinson next instructs that if a case was wrongly decided, the Court should then examine reliance interests: whether the prior decision defies “practical workability”; whether the prior decision has become so embedded, so fundamental to everyone’s expectations that to change it would produce not just readjustments, but practical real-world dislocations; whether changes in the law or facts no longer justify the prior decision; and whether the prior decision misread or misconstrued a statute. Robinson, supra at 464-467.
We are convinced, as previously set forth, that the prior decisions did in fact misread and misconstrue the statute and left it less workable, assuming that the goal was to provide notice so as to facilitate investigation, claims resolution, and rapid road repairs, as well as the creation of reserves and the like for self-insured governmental entities. When prompt notice is not provided, the entire legislative scheme is accordingly less workable.
As for reliance, we find insufficient reliance interests to prevent us from overruling Hobbs and Brown. When one focuses on the practical effect of Hobbs and Brown, it becomes quite evident that injured plaintiffs, otherwise able to file lawsuits, were highly unlikely to have delayed filing their lawsuits for periods longer than 120 *216 days in reliance on these cases. After all, what plaintiff would take the chance that the defendant could actually show prejudice after the 120th day and thus lose his or her cause of action when before that time it would be irrelevant whether there was prejudice? Accordingly, we doubt that any plaintiff, because of the inevitable perils such a delay entails, actually decided to not serve notice within 120 days in reliance on Hobbs and Brown.
Further, while the rule of Hobbs has been uncontra-dicted for 30 years, any lawyer following the decisions of this Court for the last seven years would know that the “text ignoring” approach manifested in the holdings of Hobbs and Brown has been repudiated repeatedly in the recent past by this Court. Nowhere was this more forcefully stated than in Nawrocki, supra, itself a governmental immunity case involving the defective highway exception, where we said that a court is most strongly justified in overruling precedent when adherence to the precedent would perpetuate a plainly incorrect interpretation of language in a statute. Nawrocki, 463 Mich at 181.
Robinson also held that any statutory reliance analysis has to be considered in light of the plain language of the statute. We stated:
Further, it is well to recall in discussing reliance, when dealing with an area of the law that is statutory..., that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather *217 than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court’s misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people’s representatives. Moreover, not only does such a compromising by a court of the citizen’s ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [Robinson, supra at 467-468.]
This language from Robinson fully supports overruling Hobbs and Brown because this Court in those cases confounded legitimate citizen expectations by misreading and misconstruing a statute.[14] Accordingly, it was this Court in Hobbs and Brown that disrupted the *219 citizens’ reliance interest that statutes mean what they say. We refuse to perpetuate the error of Hobbs and Brown[15]
MCL 691.1404 is straightforward, clear, unambiguous, and not constitutionally suspect. Accordingly, we conclude that it must be enforced as written. As this Court stated in Robertson v DaimlerChrysler Corp, 465 Mich 732, 748; 641 NW2d 567 (2002), “The Legislature is presumed to have intended the meaning it has plainly expressed, and if the expressed language is clear, judicial construction is not permitted and the statute must he enforced as written.” Thus, the statute requires notice to be given as directed, and notice is adequate if it is served within 120 days and otherwise complies with the requirements of the statute, i.e., it specifies the exact location and nature of the defect, the injury sustained, and the names of the witnesses known at the time by the claimant, no matter how much prejudice is actually suffered.[16] Conversely, the notice provision is not satisfied if notice is served more than 120 days after the accident even if there is no prejudice.
*220 V RETROACTIVITY
The final question is whether our decision to overrule Hobbs and Brown should have retroactive effect. As this Court held in Pohutski v City of Allen Park, 465 Mich 675, 695-696; 641 NW2d 219 (2002):
Although the general rule is that judicial decisions are given full retroactive effect, Hyde v Univ of Michigan Bd of Regents, 426 Mich 223, 240; 393 NW2d 847 (1986), a more flexible approach is warranted where injustice might result from full retroactivity. Lindsey v Harper Hosp, 455 Mich 56, 68; 564 NW2d 861 (1997). For example, a holding that overrules settled precedent may properly be limited to prospective application.
The threshold question is whether “the decision clearly established a new principle of law.” Id. at 696. If so, the factors to be considered in determining whether the general rule should not be followed are
(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. [Id.]
In Pohutski, this Court gave prospective effect to its decision overruling Hadfield v Oakland Co Drain Comm’r, 430 Mich 139; 422 NW2d 205 (1988). The Court expressed its concern that the “trespass-nuisance” exception to governmental immunity recognized in Hadfield had induced reliance by both governmental agencies and the public, insofar as “municipalities have been encouraged to purchase insurance, while homeowners have been discouraged from doing the same.” Pohutski, 465 Mich at 697. Further, the Court noted that the then-recently enacted MCL 691.1407, which provided for recovery for a “sewage disposal system event,” was prospective only and, therefore, would leave an entire class of homeowners *221 without a remedy. Given these unique considerations, the Court applied Pohutski prospectively.
However, in Wayne Co v Hathcock, 471 Mich 445; 684 NW2d 765 (2004), this Court overruled Poletown Neighborhood Council v Detroit, 410 Mich 616; 304 NW2d 455 (1981), and applied the decision retroactively. The Court explained that “[o]ur decision today does not announce a new rule of law, but rather returns our law to that which existed before Poletown and which has been mandated by our Constitution since it took effect in 1963.” Hathcock, 471 Mich at 484.
Likewise, a decision overruling Hobbs send Brown will return our law to that which existed before Hobbs and which was mandated by MCL 691.1404(1). In Hathcock, supra at 484-485 n 98, this Court further explained its determination to apply the decision retroactively:
First, this case presents none of the exigent circumstances that warranted the “extreme measure” of prospective application in Pohutski.... Second, there is a serious question as to whether it is constitutionally legitimate for this Court to render purely prospective opinions, as such rulings are, in essence, advisory opinions.
Likewise, in the instant case, there exist no exigent circumstances that would warrant the “extreme measure” of prospective application. Unlike in Pohutski, no one was adversely positioned, we believe, in reliance on Hobbs and Brown.
In Devillers v Auto Club Ins Ass’n, 473 Mich 562; 702 NW2d 539 (2005), this Court overruled Lewis v Detroit Automobile Inter-Ins Exch, 426 Mich 93; 393 NW2d 167 (1986), and also applied the decision retroactively. This Court explained:
As we reaffirmed recently in Hathcock, prospective-only application of our decisions is generally “ ‘limited to decisions which overrule clear and uncontradicted case law.’ ” *222 Lewis is an anomaly that, for the first time, engrafted onto the text of [MCL 500.3145(1)] a tolling clause that has absolutely no basis in the text of the statute. Lewis itself rests upon case law that consciously and inexplicably departed from decades of precedent holding that contractual and statutory terms relating to insurance are to be enforced according to their plain and unambiguous terms.
Thus, Lewis cannot be deemed a “clear and uncontra-dicted” decision that might call for prospective application of our decision in the present case. Much like Hathcock, our decision here is not a declaration of a new rule, but a return to an earlier rule and a vindication of controlling legal authority — here, the “one-year-back” limitation of MCL 500.3145(1). [Devillers, 473 Mich at 587 (citations and emphasis omitted).]
Likewise, in the instant case, Reich was an anomaly that, for the first time, held that notice requirements violated the constitution. Carver, decided one year later, made the contradictory conclusion that such notice requirements did not violate the constitution, but it still invented an “actual prejudice” requirement out of whole cloth. Hobbs and Brown adopted the “actual prejudice” requirement from Carver, despite the clear lack of that requirement in the statute itself. As in Devillers and Hathcock, “our decision here is not a declaration of a new rule, but a return to an earlier rule and a vindication of controlling legal authority”— enforcing the language of MCL 691.1404(1).[17] Further, overruling precedent that usurped legislative power restores legitimacy to the law.
Finally, like the Ridgeway Court almost 100 years ago, we are mindful of the fact that the public fisc is at *223 risk in these cases.[18] The decision to expand the class of those entitled to seek recovery against the government should be in the hands of the Legislature. This Court does not have the authority to waive the government’s immunity from suit, and tax dollars should only be at risk when a plaintiff satisfies all the prerequisites, including a notice provision, set by the Legislature for one of the exceptions to governmental immunity.
Accordingly, we determine that our decision today to overrule Hobbs and Brown shall be given full retroactive effect because this decision simply restores due constitutional deference to the language of the statute.
VI. CONCLUSION
Having overruled Hobbs and Brown with full retro-activity, we reverse the order of the trial court and the judgment of the Court of Appeals and remand the case to the trial court for the entry of an order dismissing plaintiffs complaint.
Corrigan, Young, and Markman, JJ., concurred with Taylor, C.J.

 Unpublished opinion per curiam, issued December 13, 2005 (Docket No. 253210).

 474 Mich 1099 (2006).

 The Legislature codified the following six exceptions in the GTLA: the defective highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; the governmental hospital exception, MCL 691.1407(4); and the sewage disposal system exception, MCL 691.1417. Further, as we recognized in Mack v Detroit, 467 Mich 186, 195; 649 NW2d 47 (2002), there are other areas outside the GTLA where the Legislature has allowed specific actions against a governmental agency notwithstanding governmental immunity, such as the Civil Rights Act. MCL 37.2103(g) and 37.2202(l)(a).

 Subsection 3 provides:
If the injured person is under the age of 18 years at the time the injury occurred, he shall serve the notice required by subsection (1) not more than 180 days from the time the injury occurred, which notice may be filed by a parent, attorney, next friend or legally appointed guardian. If the injured person is physically or mentally incapable of giving notice, he shall serve the notice required by subsection (1) not more than 180 days after the termination of the disability. In all civil actions in which the physical or mental capability of the person is in dispute, that issue shall be determined by the trier of the facts. The provisions of this subsection shall apply to all charter provisions, statutes and ordinances which require written notices to counties or municipal corporations.
One amicus curiae argues in its brief that requiring notice after only four months is unreasonable because injured persons may still be incapacitated. But, this concern is addressed by subsection 3, which allows someone who is physically or mentally incapable of giving notice to serve notice not more than 180 days after the termination of the disability.

 Justice Kelly contends in her partial dissent that we should avoid revisiting Hobbs and Brown by holding that plaintiffs notice itself was defective because it did not identify the nature of the defect of the highway, not because it was not served within 120 days. We disagree because the first question is whether the Legislature can even enact a notice provision with a hard and fast deadline. If it can, an issue we examine in this opinion, then there is no need to determine the second question of whether the late-filed notice in this case would have been adequate if it had been filed in a timely manner. While Justice Kelly accuses us of reaching unnecessary constitutional rulings, we believe it is more accurate to say that we have merely engaged in statutory analysis. But, to be able to apply the statute to the case at bar we have to dispatch the erroneous constitutional readings that were erected by the Hobbs/Brown courts to prevent us from engaging in a statutory analysis. Moreover, defendant specifically argued that plaintiff failed to comply with the 120-day notice provision of MCL 691.1404(1) in its motion for summary disposition and the trial court and the Court of Appeals relied on Hobbs/Brown to not enforce the statute. Under such circumstances, it is entirely proper for this Court to review whether Hobbs and Brown were properly decided.

 See also Kraus v Kent Co Bd of Rd Comm’rs, 385 F2d 864 (CA 6, 1967), upholding dismissal of an action in a diversity case because of noncompliance with the notice statute.

 Actually, the lead opinion in Grubaugh stated that Moulter was overruled. But, the lead opinion was only signed by three justices and two other justices only concurred in the result. Under such circumstances, Grubaugh was not binding precedent. As this Court explained in Negri v Slotkin, 397 Mich 105, 109; 244 NW2d 98 (1976), decisions in which no majority of the justices participating agree with regard to the reasoning are not an authoritative interpretation under the doctrine of stare decisis.

 Justices Riley and Boyle dissented from the Court’s holding. Justice Weaver did not participate, presumably because she had participated in the case as a Court of Appeals judge.
Justice Kelly and Justice Cavanagh argue that legislative acquiescence should save Hobbs and Brown’s erroneous construction of the notice statute. But, it has been the rule in Michigan since at least Donajkowski v Alpena Power Co, 460 Mich 243, 261; 596 NW2d 574 (1999), that the doctrine of legislative acquiescence is not recognized in this state. As we noted in Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 177-178 n 33; 615 NW2d 702 (2000), the legislative acquiescence doctrine “ ‘is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature’s intent from its words, not from its silence.’ ” (Citation omitted; emphasis omitted.) Justice Kelly’s professed fealty to stare decisis apparently would not prevent her from overruling sub silentio all the cases where we rejected the legislative acquiescence doctrine. See, e.g., Donajkowski; People v Borchard-Ruhland, 460 Mich 278, 286; 597 NW2d 1 (1999); Robinson v Detroit, 462 Mich 439,466; 613 NW2d 307 (2000); Nawrocki, supra; Hanson v Mecosta Co Rd Comm’rs, 465 Mich 492, 502; 638 NW2d 396 (2002); Robertson v DaimlerChrysler Corp, 465 Mich 732, 760; 641 NW2d 567 (2002); People v Hawkins, 468 Mich 488, 506-507; 668 NW2d 602 (2003); Neal v Wilkes, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004); Devillers v Auto Club Ins Ass’n, 473 Mich 562, 592; 702 NW2d 539 (2005); Grimes v Dep’t of Transportation, 475 Mich 72, 84; 715 NW2d 275 (2006); People v Anstey, 476 Mich 436, 445; 719 NW2d 579 (2006); Paige v Sterling Hts, 476 Mich 495, 516; 720 NW2d 219 (2006).
Furthermore, in a circumstance such as here, where the Court has said the constitution precludes the Legislature from doing as it wishes (thus making the desired legislative action impossible) a legislative acquiescence argument is entirely misbegotten. Justice Kelly claims that the Legislature could have simply reenacted the statute after identifying an additional intent. We disagree. First, the Hobbs Court said the “only” legitimate reason it could surmise for the notice statute was to prevent prejudice to the government. Inescapably this must be read to mean that *210 other reasons would not be found legitimate. Thus, adding another reason would hardly be seen as a viable option for the Legislature. In any event, the Legislature is not required to indicate in a statute what its motivations are. Rather, it is a court’s duty in “rational basis” cases such as this to find constitutionality if “ ‘ “any state of facts either known or which could reasonably be assumed affords support” ’ ” for the statute. Brown, supra at 362 (citations omitted). Justice Kelly herself has said this. Harvey v Michigan 469 Mich 1, 13-14; 664 NW2d 767 (2003).
Justice Kelly also argues that the Legislature could have amended the statute to include a presumption of prejudice. Revising the statute in such a manner, however, would not have produced what the Legislature wanted — a statute with a clearly identified and readily enforceable deadline that does not require a showing of prejudice or anything else to be enforceable.

 Justice Cavanagh argues that a minority of courts have made similar rulings. We acknowledge as much, but note that the vast majority of jurisdictions that have considered such a constitutional challenge has concluded that notice-of-claim and statute-of-limitations rules placed on persons bringing tort actions against governmental entities are rationally related to reasonable legislative purposes and thus do not violate equal protection. See, e.g., Tammen v San Diego Co, 66 Cal 2d 468; 426 P2d 753; 58 Cal Rptr 249 (1967); Fritz v Regents of Univ of Colorado, 196 Colo 335; 586 P2d 23 (1978); McCann v City of Lake Wales, 144 So 2d 505 (Fla, 1962); Newlan v State, 96 Idaho 711; 535 P2d 1348 (1975); King v Johnson, 47 Ill 2d 247; 265 NE2d 874 (1970); Johnson v Maryland State Police, 331 Md 285; 628 A2d 162 (1993); Campbell v City of Lincoln, 195 Neb 703; 240 NW2d 339 (1976); Espanola Housing Auth v Atencio, 90 NM 787; 568 P2d 1233 (1977); Herman v Magnuson, 277 NW2d 445 (ND, 1979); Reirdon v Wilburton Bd of Ed, 611 P2d 239 (Okla, 1980); James v Southeastern Pennsylvania Transp Auth, 505 Pa 137; 477 A2d 1302 (1984); Budahl v Gordon & David Assoc, 287 NW2d 489 (SD, 1980); City of Waco v Landingham, 138 Tex 156; 157 SW2d 631 (1941); Sears v Southworth, 563 P2d 192 (Utah, 1977). We agree with the majority rule.

 As United States Supreme Court Justice John Marshall Harlan stated in his famous dissent in Plessy v Ferguson, 163 US 537, 558; 16 S Ct 1138; 41 L Ed 256 (1896):
[T]he courts best discharge their duty by executing the will of the law-making power, constitutionally expressed, leaving the results of legislation to be dealt with by the people through their representatives.
*214 In a more recent iteration of the rule, we stated in DiBenedetto v West Shore Hosp, 461 Mich 394, 405; 605 NW2d 300 (2000), that courts may not “rewrite the plain statutory language and substitute our own policy decisions for those already made by the Legislature.” Accord Lansing Mayor v Pub Service Comm, 470 Mich 154, 161; 680 NW2d 840 (2004). In short, this Court had no authority to add words or conditions to the statute.

 In her dissent Justice Kelly repeats the error of the Hobbs and Brown courts in concluding that the only rational basis supporting the statute is that which the Hobbs and Brown courts fixed upon: prejudice to the government tortfeasor. One can only ask, why is this the only allowable rational basis? Must we not use, as the majority has here, the rule that Justice Kelly herself used in Harvey v Michigan, that a court must find constitutionality if any state of facts either known or which can reasonably be assumed affords support? Because there are such reasons, beyond what the Hobbs and Brown courts themselves found, as discussed in this opinion, why does this rule not apply here? Indeed, if as Justice Kelly apparently concludes, it does not, what is her test for when the rule is inapplicable? She gives none. This is not how a court should analyze matters because it makes future application of the law, should her view prevail, entirely without predictability. This is a prescription for chaos and injustice.

 See, also, Halfacre v Paragon Bridge & Steel Co, 368 Mich 366, 377; 118 NW2d 455 (1962) (Courts have the “right and duty to re-examine and re-examine again, if need be, statutory enactments already judicially construed.”). (Emphasis added.)

 Justice Kelly argues that the principle of stare decisis should prevent this Court from overruling Hobbs and Brown. We note that Justice Kelly’s fealty to precedent is quite selective. She shows no concern that Hobbs disregarded 75 years of precedent that had upheld governmental immunity notice provisions. Indeed, each of the criticisms Justice Kelly sends our way is actually more applicable to the Hobbs Court. If 30 years of precedent should not be lightly ignored, what of the Hobbs Court ignoring 75 years of precedent? In any event, we have applied the Robinson stare decisis factors and concluded that they do not counsel against overruling Hobbs and Brown.

 We note that Justice Kelly repeats in her partially dissenting opinion the canard that this Court has overruled cases at an alarming rate. As we most recently said in Paige v Sterling Hts, supra at 514, the fallacy of these statistical false alarms was demonstrated in Sington v Chrysler Corp, 467 Mich 144, 166-170; 648 NW2d 624 (2002), and Mack v Detroit, 467 Mich 186, 211; 649 NW2d 47 (2002). Moreover, an article by Victor E. Schwartz, A critical look at the jurisprudence of the Michigan Supreme Court, 85 Mich B J 38, 41 (January, 2006), shows the methodological failures of these various “the sky is falling” arguments.
Justice Kelly claims that a study by Todd C. Berg in Michigan Lawyer’s Weekly shows that this Court has overruled cases at a rate four times that of previous courts (41 cases overruling precedent out of 13,923 dispositions between 2000 and 2005 — V3 of one percent — versus 15 cases overruling precedent out of 16,729 dispositions between 1994-1999 — V21 of one percent). Leaving aside Justice Kelly’s incorrect math, when the actual figures are cited it seems obvious that during both periods the number of cases that were overruled was miniscule when compared with the number of dispositions. The difference between V21 of one percent and V3 of one percent is an inconsequential statistical difference. It can only he made to look arresting if one stretches for the most alarming way *218 to describe it. That is what Justice Kelly has done here. We invite scrutiny of the study by Mr. Berg because it reinforces, we believe, the point we are making.
In further evaluating Justice Kelly’s claim that this Court has overruled more cases than is usual, we would call attention to the difficulties in relying on earlier statistics regarding overruled cases. As explained in Devillers v Auto Club Ins Ass’n, 473 Mich 562, 567 n 6; 702 NW2d 539 (2005), it was not uncommon for this Court in earlier years to fail to state that cases it was clearly overruling were being overruled. A good example of this practice is set forth in Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691, 708; 614 NW2d 607 (2000). In Mudel this Court expressly overruled Goffv Bil-Mar Foods, Inc (After Remand), 454 Mich 507; 563 NW2d 214 (1997), which was decided five years after Holden v Ford Motor Co, 439 Mich 257; 484 NW2d 227 (1992). But, Goff had failed to acknowledge that it was overruling Holden. As we stated in Mudel-. “Therefore, unlike the unstated but effective overruling of Holden in Goff, we expressly overrule Goff, insofar as it contradicts the statutory language and departs from our decision in Holden.” 462 Mich at 708. Indeed, Justice Kelly would apparently continue with this approach of not clearly identifying overruled cases. She refers to numerous cases in this Court that rejected the doctrine of legislative acquiescence as “rogue” decisions. Post at 261-262 n 17. But, then she asserts that she would not be overruling such cases if she could persuade three other justices to approve of the discredited legislative acquiescence doctrine. Again, this illustrates the fact that Justice Kelly would not include cases she actually overruled in the list of cases she admitted overruling.
Next, Justice Kelly, to discredit the above analysis, indicates that she would not count cases where we denied leave to appeal in calculating how frequently cases were overruled. Why not? Each case presumably relied on earlier precedent, and when this Court denies leave to appeal, it leaves a precedent intact. See further Justice Markman’s concurrence, which provides an excellent and even more thorough response to Justice Kelly’s meritless claim.
Finally, in response to Justice Markman’s challenge to give her standards for overruling cases, she responds not with an approach, but with a puzzling indication that she would rely on interpretive tools such as the absurd results rule. Whatever the merits of those rules, and they have been discussed at length by this Court in recent years, they have nothing to do with determining when precedent should be overruled. In short, her response is a response to a question not asked. The reader need not be without resources in this situation because Justice Kelly has already tendered an answer. In Sington v Chrysler Corp, 467 Mich 144, *219 184 n 9; 648 NW2d 624 (2002), she said she would not reexamine precedent unless the prior decision was “utterly nonsensical,” or reflected a “drastic error.” We discussed the unworkability of this approach in our response to her in Sington.

 In dissent Justice Kelly derides our effort to properly construe the statute after previous judicial deconstructions as “second-guessing.” Does she really think that we comply with the oaths we took when we do not follow the clear directions of the Legislature in statutes and when we ignore past cases adhering to those directions? We do not. We believe the most defensible approach is to overrule cases when the criteria set forth in Robinson v Detroit are satisfied.

 Indeed, in Brown the road commission was prejudiced because it, unaware that there had been an accident, repaved the road where the accident happened before the 120-day notice period expired. This made no difference in the ability of the plaintiff to proceed with his lawsuit. 452 Mich at 360 n 11.

 Thus, we reject Justice Kelly’s claim that our decision today is tantamount to a new rule of law.

 As we noted in Mack v Detroit, 467 Mich at 203 n 18, a central purpose of governmental immunity is to prevent a drain on the state’s resources by avoiding even the expense of having to contest on the merits any claim barred by governmental immunity. Accord Ridgeway v Escariaba, 154 Mich at 73.