Young, J.
(dissenting). I fully concur with the dissenting statement of Justice Corrigan. I write separately to note that the new majority’s decision in this case reflects this Court’s more recent hostility to the notion of governmental immunity and any other legislatively imposed measure that reduces the volume of civil litigation in this state. This *1086 decision hearkens back to our predecessors’ refusal to recognize the legislative prerogative to regulate when and how the state may be sued.[1]
Since its inception, the concept of sovereign immunity has given the state government and its agencies the broadest possible protection from civil suit. The concept of sovereign, or governmental, immunity dates back to English common law. It is based on the premise that the sovereign is the law and, therefore, cannot be sued as of right in its own courts.[2] Rather, the sovereign must “expressly permití] a suit against it.”[3] Consistent with that concept, this Court, until the 1970s, historically held that the state was entitled to place conditions on the suits it permitted against itself.[4] For at least 70 years, this Court strictly upheld the plain language of such statutes that required prior notice to the government agency as a precondition for suit.[5]
Despite this long history respecting governmental immunity, the modern Court has eschewed legislatively imposed conditions on lawsuits and eroded the government’s innate immunity. Beginning in 1970, justices of this Court began to question the due process implications of treating plaintiffs who sue a governmental defendant differently from those who sue a private entity.[6] Subsequently, the Court held that the differentiation between suits against private and governmental defendants violated the equal protection rights of plaintiffs.[7]
The Court eventually acknowledged the intellectual incoherence of its constitutional assault on governmental immunity and held that a notice provision might be constitutionally valid if it “serve[s] a permissible purpose, such as to prevent prejudice . . . .”[8] The Court held that the only possible legitimate purpose that a notice provision could serve is to prevent prejudice against the governmental defendant. Accordingly, in the 1970s, the Court judicially rewrote notice provisions in governmental immunity statutes by engrafting a nonexistent “actual prejudice” element.[9] The Court upheld this judicially created element in governmental *1087 immunity notice provisions through 1996.[10] Conceding that the “actual prejudice” element was not in the plain language of such statutory notice provisions, the Court held that the Legislature had “acquiesced” in this interpretation because it had not amended the governmental immunity statutes to “overrule” the judicially engrafted element.[11]
The earlier Court’s ever evolving legal rationale to limit governmental immunity notice provisions evinced a policy-driven desire to promote suits against government defendants. The language of these provisions is clear and unambiguous; yet, the Court went to great lengths “to justify and enforce its hostility” toward the concept of governmental immunity and to supplant its policy choice for that of the Legislature.[12]
However, as this Court has more recently reiterated, governmental immunity legislation is constitutionally valid because it is reasonably related to several legitimate government interests.[13] Notice provisions afford the government “ ‘the opportunity to investigate and evaluate a claim.’ ”[14] They protect the government’s publicly funded treasury from “ ‘unjust raids ... by unscrupulous prosecution of trumped-up, exaggerated, and stale claims, by requiring a claimant to give definite information ... at a time when the matter is fresh, conditions unchanged, and *1088 witnesses thereto and to the accident within reach.’ ”[15] More broadly, notice provisions are constitutional because the Legislature created them as “quid pro quo for its relinquishment of immunity” in relation to civil suits permitted under the exceptions to governmental immunity.[16]
Despite the various well-reasoned purposes notice provisions serve, justices of the modern Court have boldly stated:
[W]e acknowledge frankly that statutes which limit access to the courts by people seeking redress for wrongs are not looked upon with favor by us. We acquiesce in the enforcement of statutes of limitation when we are not persuaded that they unduly restrict such access, but we look askance at devices such as notice requirements which have the effect of shortening the period of time set forth in such statutes.[17]
Although commendable for its blunt honesty, such a statement undermines our tripartite system of government and is acutely repugnant to the right of the people to express their views through their elected representatives in the Legislature. This is rule by a judicial oligarchy. It is completely contrary to our judicial function. Reversion to overruled caselaw that proudly usurps the legislative function in this fashion is exactly what the new majority has accomplished by ignoring Rowland and engrafting a “substantial compliance” exception onto the notice provision in the public building exception to governmental immunity.[18]
The new majority’s reversion is not surprising given its members’ past expressions of distaste for governmental immunity principles. For example, members of the new majority have repudiated the concept that immunity is a characteristic of government and would foist the duty of raising immunity onto the government as an affirmative defense.[19] The members of the new majority have not limited their disapproval of legislative limitations on causes of action to those against the govern *1089 ment. They have challenged statutes of limitations, notice and tolling provisions, and express limitations in the Legislature’s defined parameters on causes of action.[20]
As noted by Justice Corrigan, the exercise sub silentio of judicial power will reign supreme in the new order the new majority desires to create.
For these reasons and those stated in Justice Corrigan’s statement, I dissent from the new majority’s decision to vacate our prior, preceden-tially supported order to reverse the Court of Appeals judgment and to simply deny leave to appeal without explanation of the majority’s failure to follow Rowland.
Corrigan and Markman, JJ. We join the statement of Justice Young.

 See Young, A judicial traditionalist confronts Justice Brennan’s school of judicial philosophy, 33 Okla City U L R 263, 269-271 (2008).

 Odom v Wayne Co, 482 Mich 459, 477 (2008), citing Prosser, Torts (4th ed), § 131, p 970, and 4 Restatement Torts, 2d, ch 45A, p 394.

 Id., citing Prosser, supra, § 131, pp 971, 975-976, and Restatement, supra, § 895D and comment a, pp 399-401. See also Young, supra at 269-270 and n 21.

 Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 212 (2007), quoting Moulter v Grand Rapids, 155 Mich 165, 168-169 (1908).

 Id. at 205-206 (citing caselaw dating from 1897 through 1969).

 Id. at 206, citing Grubaugh v City of St Johns, 384 Mich 165 (1970).

 Id. at 206-207, citing Reich v State Hwy Dep’t, 386 Mich 617 (1972).

 Id. at 208, citing Carver v McKearn, 390 Mich 96 (1976).

 Hobbs v Dep’t of State Hwys, 398 Mich 90 (1976); Carver, supra.

 Brown v Manistee Co Rd Comm, 452 Mich 354 (1996).

 Id. at 366-368 and n 18. As we emphatically held in Donajkowski v Alpena Power Co, 460 Mich 243, 261 (1999), legislative acquiescence “is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature’s intent from its words, not from its silence.” (Emphasis in original.)
In any event, Brown’s conclusion based on the theory of legislative acquiescence is legally infirm. Brown asserted that the actual prejudice element was only engrafted onto the governmental immunity notice provision because the Court “could not posit another purpose for the notice provision . . . .” Brown, supra at 367 n 18. Accordingly, the Legislature could have subsequently clarified the statute by “further articulating] the notice provision’s purpose and possibly [creating] a presumption of prejudice” from the lack of timely notice. Id. As aptly noted by the dissent in Brown, however, the Legislature was powerless to remove the judicially created actual prejudice element from the statute because Hobbs held that this element “saved the statute from constitutional infirmity.” Brown, supra at 373 (Riley, J., dissenting).

 Young, supra at 271.

 Rowland, supra at 212. Moreover, we must find a statute constitutional if “any state of facts either known or which could reasonably be assumed affords support” for the holding. Id. (quotation marks and citations omitted).

 Id. at 211, quoting Brown, supra at 370 (Riley, J., dissenting).

 Id., quoting Ridgeway v Escanaba, 154 Mich 68, 72-73 (1908).

 Brown, supra at 372 (Riley, J., dissenting).

 Carver, supra at 99 (emphasis added), quoted with approval in Hobbs, supra at 96.

 MCL 691.1406.

 See, e.g., Lash v Traverse City, 479 Mich 180, 201 (2007) (Kelly, J., dissenting in part) (arguing that governmental immunity is the exception rather than the rule and the governmental defendant must raise and prove immunity as an affirmative defense); Costa v Community Emergency Medical Services, Inc, 475 Mich 403, 416-420 (2006) (Kelly, J., dissenting) (arguing that governmental immunity is an affirmative defense and, therefore, it does not contradict the purpose of the doctrine to require a governmental defendant to file an affidavit of meritorious defense, MCL 600.2912e, in a medical malpractice case); Mack v Detroit, 467 Mich 186, 220-222 (2002) (Cavanagh, J., dissenting) (expressing his preference for recent caselaw over the centuries-old common-law concept *1089 of governmental immunity in arguing that the governmental defendant must plead immunity as an affirmative defense).

 See, e.g., Trentadue v Buckler Automatic Lawn Sprinkler Co, 479 Mich 378, 420-425 (2007) (WEAVER, J., dissenting) (arguing that this Court should follow the common-law discovery rule regarding the accrual date of a claim for the purposes of a statute of limitations without regard to the subsequent enactment of a highly comprehensive statutory scheme meant to preempt the common law); Roberts v Mecosta Co Gen Hosp (After Remand), 470 Mich 679, 709 (2004) (Kelly, J., dissenting) (suggesting we adopt a substantial compliance standard for notices of intent in medical malpractice actions “if they serve the object of the statute and do not prejudice the defendant”); Cox v Flint Bd of Hosp Managers, 467 Mich 1, 50-54 (2002) (Kelly, J., dissenting) (contending that the standards of care for a medical malpractice action under MCL 600.2912a should apply to neonatal nurses, even though those individuals are not engaged in the practice of medicine as defined by the statute); McDougall v Schanz, 461 Mich 15, 52-55 (1999) (Cavanagh, J., dissenting) (arguing that statutory standards or requirements for expert witness qualifications in medical malpractice actions do not affect the substance of the cause of action and, therefore, represent a legislative usurpation of judicial power).