*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COPPERFIELD VILLAS ASSOCIATION,

UNPUBLISHED
May 21, 2020

Plaintiff-Appellant,

v

No. 348518
Livingston Circuit Court
LC No. 18-030122-CH

BARRY TUER JR. and ALLISON TUER,

Defendants-Appellees.

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The Copperfield Villas Association (CVA) filed this lawsuit against Barry and Allison Tuer, property owners in the Copperfield Villas condominium development, to enforce various provisions of the community's Bylaws. Before the CVA filed suit, it sent the Tuers several notices seeking their voluntary compliance. The Tuers responded by demanding arbitration under another Bylaws provision. The association rejected the arbitration demand and filed suit.

The circuit court correctly determined that the Tuers could not unilaterally demand arbitration under the Bylaws or under the Condominium Act, MCL 559.101 *et seq*. However, the circuit court erred in determining that the CVA was required under the Bylaws to secure approval from a majority of the condo coowners before initiating litigation. Accordingly, we reverse the order summarily dismissing the CVA's complaint and remand for further proceedings.

## I. BACKGROUND

Barry and Allison Tuer own a home in the Copperfield Villas site condominium development. The Tuers completed construction and moved into their home in early 2014. The CVA alleges that the Tuers violated the association Bylaws on multiple occasions over the years by failing to weed and maintain the lawn, parking their vehicles on the lawn, placing stones or gravel and a wooden curb on a common area, and without prior approval constructing a fenced-in dog kennel, expanding their driveway, and installing a parking lot.

The association filed suit on December 6, 2018, seeking an injunction requiring the Tuers' compliance with the Bylaws. The association conceded that the Bylaws contained an arbitration

-1-

agreement that could be invoked by any party to a dispute. Specifically, Article III of the Bylaws, entitled "alternative dispute resolution; civil actions," states:

> In the event of a dispute between the Association and a Co-owner other than the Developer, or a dispute or any claims or grievance between the Co-owners related to the application or enforcement of any Condominium Documents, *any party* to the dispute may demand the dispute be resolved [through] arbitration *as provided under Section 54(8) of the [condominium act]* . . . .
>
> Section 1.        Demand and Election.
>
> (a) Section 54(8) of the Act provides in part:
>
> "The Bylaws shall contain a provision providing that arbitration [of] disputes, claims and grievances arising out of or relating to the interpretation [or] the application of the condominium document or arising out of disputes among or between Co-owners shall be submitted to arbitration and that parties to the dispute claim or grievance shall accept the arbitrator decision as final and binding . . ."
>
> (b) If the demand for Alternative Dispute Resolution is made, no lawsuit may be commenced in any court. [Emphasis added.]

In Count II of its complaint, the CVA sought a declaratory judgment that the unilateral arbitration provision violated MCL 559.154(8)-(9) of the Condominium Act, MCL 559.101 *et seq*., and therefore was illegal and unenforceable.

The statute cited by the CVA—MCL 559.154—provides mandatory provisions for condominium bylaws. Relevant to this appeal, the statute provides:

> (8) The bylaws shall contain a provision providing that arbitration of disputes, claims, and grievances arising out of or relating to the interpretation of the application of the condominium document or arising out of disputes among or between co-owners shall be submitted to arbitration and that the parties to the dispute, claim, or grievance shall accept the arbitrator's decision as final and binding, *upon the election and written consent of the parties* to the disputes, claims, or grievances and upon written notice to the association. . . .
>
> (9) *In the absence of the election and written consent of the parties* under subsection (8), neither a co-owner nor the association is prohibited from petitioning a court of competent jurisdiction to resolve any dispute, claim, or grievance.
>
> (10) *The election by the parties* to submit any dispute, claim, or grievance to arbitration prohibits the parties from petitioning the courts regarding that dispute, claim, or grievance. [MCL 559.154 (emphasis added).]

Along with their answer to the complaint, the Tuers filed a motion for summary disposition. The Tuers presented a series of letters from the fall of 2018, during which the parties attempted to

negotiate their disagreements. When the negotiations fell apart, the Tuers demanded arbitration. Citing the unilateral arbitration provision in the Bylaws, the Tuers contended that the CVA was not permitted to file suit and that the court must dismiss the litigation. The Tuers asserted that summary disposition was also required because the CVA board failed to secure approval of a majority of the coowners before filing a lawsuit to declare a Bylaws provision illegal and unenforceable, as required by the Bylaws. Specifically, the Bylaws state: "As provided in the Articles of Incorporation of the Association, the commencement of any civil action (other than one to enforce these Bylaws or collect delinquent assessments) shall require the approval of a majority in number and in value of the Co-owners . . . ." The Articles of Incorporation include an identical requirement.

The Bylaws permit the CVA to file a lawsuit without coowner approval if the suit is simply to enforce the Bylaws or to collect delinquent fees. In an attempt to avoid the summary disposition motion, the CVA filed an amended complaint without the declaratory judgment count. The CVA removed any mention of the unilateral arbitration provision from its factual and legal discussion.

Two weeks later, the CVA responded to the Tuers' summary disposition motion. The motion to dismiss for failure to secure preapproval for the lawsuit from a majority of the coowners was rendered moot by the complaint amendment, the CVA argued. And the CVA defended against the Tuers' motion to dismiss based on their arbitration demand by contending that the Bylaws' arbitration provision violated MCL 559.154(8), which mandates the inclusion in condominium bylaws of bilateral arbitration provisions.

The CVA contended that MCL 559.154(8) requires that bylaws contain a provision making arbitration available "upon the election and written consent of the parties," in the "[p]lural, not singular" form. Subsection (9) prohibits the parties from filing suit only if "the parties," plural, elect arbitration. Although the CVA Bylaws seem to provide for arbitration under the statute, the CVA contended that the Bylaws went "directly against" the statute "in allowing for a unilateral demand for arbitration to close [the] door to the Courthouse to the party that did not consent to arbitrate." If the court granted the Tuers' motion for summary disposition, the CVA insisted, it would deny the CVA of its statutory right to file suit and not be compelled into arbitration. The CVA contended that the unilateral arbitration provision in the Bylaws was illegal and unenforceable. The problematic provision could be severed from the remainder of the Bylaws and the statute read into the document in its place.

The court heard arguments on the summary disposition motion on February 21, 2019. The Tuers described the CVA's recent amendment of its complaint as "a form over substance sort of maneuver." Whether raised as a count in the complaint or a defense to the summary disposition motion, the CVA asked the court to interpret the Bylaws, find that the arbitration provision violated the statute, and therefore hold it invalid and unenforceable. As the CVA's argument involved something more than enforcement of the Bylaws or collection of delinquent fees, the CVA was required to hold a vote of the coowners before filing suit. The CVA did not secure approval before filing suit, and therefore, it had to be dismissed, the Tuers contended. And by removing the declaratory judgment count from the complaint while still arguing that the arbitration provision was unenforceable, the Tuers asserted that the CVA "would be trying to get back through the backdoor what it can't get through the front door."

The CVA retorted that the Tuers' assertion that it had not complied with the prelitigation approval procedure was "a complete side show." "If you read that provision," the CVA urged the court, "it expressly applies only to actions other than to enforce the bylaws or for collections. This case right now is about the [Tuers] violating the bylaws in various ways . . . ." It only included the declaratory judgment count in its original complaint, the CVA claimed, "because they brought [the arbitration provision] up that [sic] they said we couldn't come to court. When they filed this motion for summary disposition we dropped count two just to make it very clear that all we're here about is a bylaws enforcement action."

As to the arbitration demand, the CVA agreed with the Tuers that the Bylaws were to be interpreted like a contract. Courts do not enforce illegal provisions in contracts. MCL 559.154(8) requires that bylaws include a provision for arbitration at the election of both parties, the CVA contended. The Bylaws required an action to be arbitrated when only one party demanded it. This was illegal and unenforceable.[1] And as only the Tuers demanded arbitration, and the CVA refused it, the court could not force the parties into arbitration under the law. The CVA compared the current case to one arising under the statute mandating terms for insurance contracts. In those cases, the CVA asserted, "the courts looked to the statute to decide how the policy is interpreted. They don't look to the language of the policy itself."

The Tuers retorted that contrary to the CVA's arguments, it would not be forced into arbitration. Instead, if the court summarily dismissed the CVA's complaint, it would be required only to secure the approval of a majority of the coowners before filing suit.

The circuit court granted the Tuers' summary disposition motion at the close of the hearing, ruling:

> I do find that the statute requires both sides to agree to arbitration. In these bylaws it doesn't mention that both sides have to agree to it. But when they make reference to the statute I think they bootstrap the statute in that [it] requires both sides to agree to arbitration to get it to arbitration. So I recognize that by . . . applying the law to the bylaws in referencing that statute, and the statute's provision requiring arbitration to be mutually agreed to would have to have mutual agreement to get to arbitration. But that is - - that's further on down. We don't even get to that point till [sic] we decide whether or not the case should be in court at all. Whether or not there's been an approval by the association to sue the defendant.

The court asked the CVA's counsel to clarify that a majority vote was required to file suit. Counsel replied, "Your Honor, yes, but only for cases not involving actions to enforce the bylaws. So an action to collect or enforce the bylaws is expressly exempt from this pre-litigation vote requirement."

---

[1] Counsel for the CVA asserted that the developer and its attorney drafted the Bylaws before the association was created.

The court continued:

> Right now what I'm gonna do is I'm gonna dismiss the case with prejudice [sic]. I'm granting the motion for summary disposition on the (c)(8) grounds. And then get the majority if you need to. This will give . . . the parties the opportunity to be able to discuss lawyer to lawyer if the case can be resolved before the expense of litigation will be incurred. If that's the case if the association - - the way I read the rules go ahead and authorizes their association to go forward against a resident then we'll cross the bridge when we get to it. I - - as far as that declaratory relief part about how the statute be interpreted I think that it's got to be a mutual and - - even the bylaws don't specifically say it, the statute does. So you won't have to go to arbitration but come to me, but - - if this case comes back from what I read. But hopefully it won't get there. So I'll grant the motion for summary disposition without prejudice.

The court subsequently entered a written order clarifying that it dismissed the action without prejudice.

The CVA sought reconsideration of the circuit court's order, arguing that by the time of the summary disposition hearing, its only remaining count was for Bylaws violations. The Tuers never contended that the CVA needed preapproval of the coowners before litigating that count. And a suit for Bylaws violations was exempt under the Bylaws from the preapproval requirement. The CVA accused the Tuers of misleading the court "by suggesting that even though Count II had been dismissed, . . . Count I was subject to" the coowner preapproval provision. "But how can interpreting the Bylaws arbitration provision," the CVA contended, "make [the suit] not 'one to enforce the Bylaws'?" "Ironically, the [Tuers'] entire argument that the Bylaws arbitration provision as written was enforceable is itself an argument to enforce the Bylaws!" Under the court's reasoning, any time a defendant asserted that a bylaws violation case required an interpretation of a bylaw provision, the association would be deemed to require approval of the coowners before filing suit and the case would have to be dismissed.

The circuit court denied the CVA's motion. The CVA now appeals.

## II. ANALYSIS

We review a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). We review de novo a lower court's interpretation of a contract, like a condominium association's bylaws. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). We also review de novo a trial court's interpretation of statutory provisions. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

As described in *Tuscany Grove Ass'n*, 311 Mich App at 393:

> Pursuant to the Condominium Act, the administration of a condominium project is governed by the condominium bylaws. MCL 559.153. Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium. See

MCL 559.103(9)and (10); MCL 559.108. Condominium bylaws are interpreted according to the rules governing the interpretation of a contract. See *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002). Accordingly, this Court begins by examining the language of the bylaws. See *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). Words are interpreted according to their plain and ordinary meaning. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). Further, this Court avoids interpretations that would render any part of the document surplusage or nugatory, and instead this Court gives effect to every word, phrase, and clause. *Id*. Ultimately, we enforce clear and unambiguous language as written. *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012).

The circuit court did not err in determining that mutual consent was required to take the parties' dispute to arbitration. Regardless of the wording of the arbitration provision in the Bylaws, other Bylaws provisions demand that the language of the condominium act controls. Article XVII states that "[i]n the event the Condominium Documents conflict with the provisions of the Act, the Act shall govern." And Article XXII, § 2(a) provides, "In the event of a conflict between the Act, the Master Deed, the Articles of Incorporation, Bylaws and Rules and Regulations, the Act shall control."

As quoted, MCL 559.154(8) and (9) require condominium bylaws to include a provision for arbitration at "the election and written consent of the parties." The Legislature employed the plural noun "parties" in MCL 559.154(8) and (9), demonstrating that all parties to a dispute must elect and consent to arbitration in lieu of litigation. The Legislature's use of the word "consent" supports this interpretation. To "consent" means "to give assent or approval: AGREE." *Merriman-Webster Dictionary*, available at <https://www.merriam-webster.com/dictionary/consent> (accessed April 20, 2020). It takes two to consent or agree to participate in arbitration, much like it takes two to consent to a contract or to reach a consent judgment. The circuit court correctly determined therefore that the Tuers were not permitted to unilaterally demand arbitration and that summary disposition was not proper on that ground.

However, the circuit court did err in determining that summary disposition was required based on the CVA's failure to secure approval of a majority of the condominium coowners before filing suit. The Articles of Incorporation and the Bylaws provide that the CVA is not required to seek preapproval from the coowners before filing suit "to enforce the Bylaws or collect delinquent assessments." This case was one to enforce various provisions of the Bylaws. Specifically, the CVA sought the Tuers' compliance with requirements that an owner secure "express written approval of the Association" before "mak[ing] any alterations in the exterior appearance of his or her dwelling or mak[ing] changes in any of the Common Elements," submit plans before erecting

a "structure" or making an "improvement" on the property, and avoid parking on common elements or the lawn.[2]

The CVA amended its complaint and removed the count to declare the Bylaws arbitration provision invalid. This was not "a form over substance sort of maneuver." Rather, Count II was a preemptive strike to a defense asserted by the Tuers before the suit was even filed; it was not necessary to litigate the CVA's real concern—the Tuers' multiple Bylaws violations. Had the Tuers acknowledged that other Bylaws provisions expressly made the statute control, the CVA would not have been required to defend itself against an arbitration demand in a summary disposition motion. Most importantly, the Bylaws do not require the CVA to secure coowner approval to raise a defense to a summary disposition motion in a Bylaws violation action. Accordingly, the circuit court plainly erred in summarily dismissing the CVA's complaint on this ground. The court should have permitted the action to proceed with discovery and toward trial.[3]

We reverse the order summarily dismissing the CVA's complaint and remand for continued proceedings. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[2] The CVA further contends that it sought enforcement of the Tuers' duty to maintain, repair and replace their own landscaping and lawn, but cite a nonexistent Bylaws provision for this requirement.

[3] The CVA further contends that it is entitled to costs and attorney fees under the Bylaws. The CVA may request these costs and fees in the circuit court on remand.