# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

ATKINS v SUBURBAN MOBILITY AUTHORITY FOR
REGIONAL TRANSPORTATION

Docket No. 140401. Argued March 7, 2012. Decided August 20, 2012.

Vivian Atkins brought an action in the Wayne Circuit Court against the Suburban Mobility Authority for Regional Transportation (SMART), seeking damages in tort for injuries she suffered while riding on a bus operated by SMART that was involved in an accident. Plaintiff had filed an application for no-fault benefits with defendant's insurer 10 days after the accident, but waited more than 7 months to notify defendant that she might pursue a tort action. The court, Kathleen Macdonald, J., granted defendant's motion for partial summary disposition, concluding that plaintiff had given notice of her injury but had failed to give defendant notice of her tort claims within 60 days of the accident as required by the notice provision of the Metropolitan Transportation Authorities Act, MCL 124.419. The Court of Appeals, FORT HOOD, P.J., and SAWYER and DONOFRIO, JJ., reversed in an unpublished opinion, issued October 22, 2009 (Docket No. 288461), concluding that plaintiff's no-fault claim and information plaintiff had supplied to defendant and its insurer were sufficient to give defendant notice of a third-party tort claim. The Supreme Court ordered and heard oral argument on whether to grant defendant's application for leave to appeal or take other peremptory action. 489 Mich 958 (2011).

In an opinion by Chief Justice YOUNG, joined by Justices MARKMAN, MARY BETH KELLY, and ZAHRA, the Supreme Court *held*:

Notice of a plaintiff's application for first-party no-fault benefits does not constitute written notice of a third-party tort claim sufficient to comply with MCL 124.419.

1. Under MCL 124.419, a claim brought against a transportation authority in derogation of governmental immunity must be presented as an ordinary claim against the common carrier involved. Notice of the claim must be served within 60 days of the occurrence through which the injury occurred. Any judgment is payable from funds of the authority, and jurisdiction is limited to those courts in the counties where the authority carries on its functions.

2. The 60-day limitation of MCL 124.419 applies to any ordinary claims brought against a transportation authority that arise out of injury to persons or property. The term "ordinary claims" includes traditional tort claims arising out of occurrences involving a common carrier through which injury is sustained. A claim for no-fault benefits is not an ordinary claim for purposes of MCL 124.419 because it is not a tort claim and is not paid from the authority's

funds, as traditional tort claims are, but is paid by a carrier's no-fault insurer. An application for no-fault benefits is qualitatively distinct in nature from a claim for third-party tort benefits, so that notice of one does not serve as notice of the other. First-party no-fault benefits are recoverable without regard to fault, unlike tort liability, which involves an adversarial process in which the plaintiff must prove fault to recover.

3. The Court of Appeals erred by holding that plaintiff's no-fault application, coupled with her communications with defendant or its insurer concerning her medical condition, sufficed to satisfy the 60-day notice requirement of MCL 124.419. There is no aspect of substantial compliance to the statutory notice requirement. Actual written notice of an ordinary claim for personal injury is required by the notice requirement of MCL 124.419. The circuit court properly granted defendant partial summary disposition because plaintiff failed to provide defendant written notice of her tort claims within 60 days from the occurrence through which the injury was sustained.

Reversed and remanded for reentry of the circuit court's order granting defendant partial summary disposition.

Justice MARILYN KELLY, joined by Justices CAVANAGH and HATHAWAY, dissenting, would have affirmed the Court of Appeals' judgment and remanded the case to the circuit court for further proceedings. Statutory notice requirements should be enforceable only to the extent that a defendant is prejudiced by a plaintiff's noncompliance. Preventing actual prejudice to a defendant because of lack of notice is the primary legitimate purpose of notice provisions. Justice KELLY would have held that partial summary disposition on the basis of failure to comply with the 60-day notice requirement was inappropriate because defendant had notice of the factual basis of plaintiff's tort claims when she filed a claim for no-fault benefits with defendant's insurance carrier and defendant, through its carrier, received plaintiff's medical records as well as other reports regarding her condition. Thus, plaintiff substantially complied with MCL 124.419 and defendant was not prejudiced.

©2012 State of Michigan

# Opinion

Chief Justice:      Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED AUGUST 20, 2012

STATE OF MICHIGAN

SUPREME COURT

VIVIAN ATKINS,

      Plaintiff-Appellee,

v

No. 140401

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION,
d/b/a SMART,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

YOUNG, C.J.

Plaintiff was a passenger on a bus operated by the Suburban Mobility Authority for Regional Transportation (SMART) when the bus was involved in an accident. Plaintiff filed an application for no-fault benefits with SMART's insurer soon thereafter, but waited more than seven months to notify SMART that she might pursue liability in tort. SMART moved for partial summary disposition, arguing that the notice provision of the Metropolitan Transportation Authorities Act, MCL 124.419, required notice of plaintiff's tort claims within 60 days of the accident as a condition precedent to

maintaining those claims. The circuit court granted SMART partial summary disposition, but the Court of Appeals reversed.

MCL 124.419 requires that a plaintiff who wishes to bring a claim for injury to person or property arising out of an incident with a common carrier like SMART must provide notice of the claim to the transportation authority within 60 days. Statutory notice requirements must be interpreted and enforced as plainly written. Thus, we hold that notice of plaintiff's application for no-fault insurance benefits, even when supplemented with SMART's presumed "institutional knowledge" of the underlying facts of the injury, does not constitute written notice of a third-party tort claim against SMART sufficient to comply with MCL 124.419. The provisions of MCL 124.419 apply to "ordinary claims" that arise in connection with a common carrier, and the 60-day notice requirement pertains to such claims for personal injury or property damage. An ordinary claim against a common carrier does not include claims made for first-party no-fault benefits. Those no-fault claims are not ordinary tort claims, but a statutory benefit permitted in lieu of tort remedies. Thus, the statutory notice provision does not apply to no-fault claims, and an application for first-party no-fault benefits does not satisfy the statutory requirement to provide the transportation authority notice of a plaintiff's intent to pursue a third-party tort claim. Nor does a common carrier's presumed institutional knowledge of an injury or occurrence relieve a claimant of the obligation to give the formal notice required by the statute.

The judgment of the Court of Appeals is reversed.

2

## I.  FACTS AND PROCEDURAL HISTORY

On September 15, 2006, plaintiff, Vivian Atkins, was a passenger on a SMART bus when it collided with another SMART bus.  SMART immediately investigated the accident at the scene, but plaintiff did not believe that she had sustained any serious injuries and did not stay for the investigation.  However, approximately 10 days after the accident, plaintiff contacted ASU Group, SMART's no-fault claims representative, and advised that she had been injured in the accident.  ASU sent plaintiff an application for no-fault benefits, which she completed and returned to ASU.  Plaintiff identified her medical providers and described injuries to her shoulders, stomach, and back.

SMART, through its insurer, began paying plaintiff first-party, no-fault benefits.  While paying benefits, SMART received updates on plaintiff's condition, including a physician's report.  SMART also became aware that plaintiff was on a short leave of absence from work beginning on October 30, 2006, and that plaintiff's mother and daughter were performing some household services for plaintiff.  Unfortunately, plaintiff's condition continued to worsen, and an MRI revealed disk herniations and degenerative changes in her spine.  Through her attorney, plaintiff sent a letter to SMART on May 4, 2007, notifying that entity of her intent to pursue tort claims arising out of the accident.

On August 7, 2007, plaintiff filed a complaint against SMART, alleging third-party claims for negligence resulting in a serious impairment of body function, negligent entrustment, and respondeat superior, as well as a claim for first-party no-fault benefits.  SMART moved for summary disposition with respect to the tort claims, alleging that

3

plaintiff had failed to give notice of her tort claims as prescribed by MCL 124.419, which

provides in relevant part:

> All claims that may arise in connection with the transportation authority shall be presented as ordinary claims against a common carrier of passengers for hire: Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained . . . .

The Wayne Circuit Court held that plaintiff had given notice of injury, but had failed to

give notice of her tort claims within 60 days as required by the statute. The court thus

granted summary disposition to SMART on the tort claims.

The Court of Appeals reversed, reasoning that SMART's knowledge of plaintiff's

no-fault claim and the aggregate information that plaintiff had provided to SMART and

its insurer were sufficient to give SMART written notice of a third-party tort claim.[1] The

Court observed that MCL 124.419 does not "delineate between notice of a claim for first-

party no-fault benefits and notice of a third-party tort claim."[2] The Court thus reasoned

that this provision only requires notice of "a" claim, which it defined as the aggregate of

operative facts giving rise to an enforceable right.[3] As a result, reasoned the Court of

Appeals, the statute only requires notice without any additional specific requirements of

---

[1] *Atkins v Suburban Mobility Auth for Regional Transp*, unpublished opinion per curiam of the Court of Appeals, issued October 22, 2009 (Docket No. 288461), p 3.

[2] *Id*. at 2.

[3] *Id*. at 2-3.

4

what information must be included.[4]  On the basis of this analysis, the Court concluded

that SMART had sufficient notice of plaintiff's tort claim within the 60-day period:

> Defendant . . . had timely notice that plaintiff was injured, and it knew that, 60 days after the accident, she continued to require medical treatment, provision of household services, and restriction from work. While plaintiff had no proof that she had suffered permanent disfigurement or serious impairment of body function, by the expiration of the 60-day period, defendant had notice of the operative facts needed to anticipate plaintiff's tort claim, and plaintiff had demanded payment for her injuries. The statute does not require a defendant to know what legal theory a plaintiff will pursue, only that it have notice of facts giving rise to a right to seek damages or payment.  Therefore, we hold that the information defendant had before the expiration of the 60-day period was sufficient to provide written notice of plaintiff's third-party claim.[5]

Finally, the Court of Appeals qualified its conclusion, noting that not all no-fault claims

would constitute notice of a tort claim:

> For example, if the plaintiff's injury was something that apparently would be quickly resolved (like an abrasion or bruise), or if the circumstances of the accident were such that there was no apparent negligence by the defendant (such as a hit-and-run driver running into the defendant's vehicle), a defendant would not necessarily have notice that a tort claim would follow.  For this reason, defendant is correct in its argument that merely having notice of the accident is insufficient.  But here, *defendant had notice of all the facts that would support plaintiff's third-party claim.*[6]

SMART applied for leave to appeal in this Court.  We ordered arguments on

SMART's application, directing the parties to consider "whether written notice of the

---

[4] *Id.*

[5] *Id.* at 3.

[6] *Id.* (emphasis added).

5

plaintiff's no-fault claim, together with SMART's knowledge of facts that could give rise to a tort claim by the plaintiff, constituted written notice of her tort claim sufficient to comply with MCL 124.419."[7]

## II. STANDARD OF REVIEW

This Court reviews de novo the grant or denial of summary disposition motions.[8] This case calls on us to consider the statutory notice provision of MCL 124.419. Matters of statutory interpretation are also reviewed de novo.[9]

## III. ANALYSIS

Generally, governmental agencies in Michigan are statutorily immune from tort liability.[10] However, because the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed.[11] Statutory notice provisions are a common means by which the government regulates the conditions under which a person may sue governmental entities. It is well established that statutory notice

---

[7] *Atkins v SMART*, 489 Mich 958 (2011).

[8] *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

[9] *Id.*

[10] See generally MCL 691.1401 *et seq.*; *Rowland*, 477 Mich at 202-203.

[11] See *Moulter v Grand Rapids*, 155 Mich 165, 168-169; 118 NW 919 (1908) ("It being optional with the legislature whether it would confer upon persons injured a right of action therefor or leave them remediless, it could attach to the right conferred any limitations it chose."); accord *Rowland*, 477 Mich at 212.

6

requirements must be interpreted and enforced as plainly written and that no judicially created saving construction is permitted to avoid a clear statutory mandate.[12]

The Metropolitan Transportation Authorities Act describes in what manner liability may be imposed on a transportation authority for situations involving the operation of a common carrier for hire. It includes a notice provision, MCL 124.419, which provides in full:

> All claims that may arise in connection with the transportation authority shall be presented as ordinary claims against a common carrier of passengers for hire: *Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained* and the disposition thereof shall rest in the discretion of the authority and all claims that may be allowed and final judgment obtained shall be liquidated from funds of the authority: Provided, further, That only the courts situated in the counties in which the authority principally carries on its function are the proper counties in which to commence and try action against the authority.[13]

MCL 124.419 thus provides that claims may be brought against a transportation authority in derogation of governmental immunity and requires that those claims be presented as "ordinary claims" against the common carrier involved. The statute then imposes certain statutory restrictions on the resultant suits against common carriers. First, when the claim involves injury to person or property, the statute requires written notice of the claim to be served within 60 days of the injury. The statute further provides

---

[12] See *Rowland*, 477 Mich at 211; see also *McCahan v Brennan*, ___ Mich ___; ___ NW2d ___ (August 20, 2012, Docket No. 142765).

[13] Emphasis added.

7

that any judgment obtained is payable from funds of the authority and restricts jurisdiction to courts in the counties where the authority carries on its function.

At issue in this case is whether an application for no-fault benefits can suffice as the notice of a separate tort claim that MCL 124.419 requires. Our primary objective when interpreting a statute is to discern the Legislature's intent. "This task begins by examining the language of the statute itself. The words of a statute provide 'the most reliable evidence of its intent . . . .'"[14] When the Legislature has clearly expressed its intent in the language of the statute, no further construction is required or permitted.[15]

The Court of Appeals held that plaintiff's no-fault application and her communications with SMART or its insurer provided SMART with sufficient knowledge to anticipate plaintiff's tort claim, and thus sufficed as the notice required to satisfy the statute. We disagree. MCL 124.419 plainly requires "written notice" of any "ordinary claims" for personal injury within 60 days of the underlying occurrence, and the ordinary claims that may be brought pursuant to the statute are qualitatively different from a demand for no-fault benefits paid by a common carrier's insurer. Accordingly, the demand for no-fault benefits and other communications with SMART or its insurer did not satisfy the "written notice" requirement with respect to plaintiff's ordinary claims.

The text of MCL 124.419 indicates that its provisions pertain only to ordinary claims brought against a transportation authority. In order to effectuate the Legislature's

---

[14] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

[15] *Sun Valley*, 460 Mich at 236.

8

purpose, we interpret statutes cohesively, and we read specific statutory provisions in the context of that which surrounds them.[16] The prefatory clause of MCL 124.419 states that "[a]ll claims that may arise in connection with the transportation authority shall be presented as ordinary claims." The statute then provides the specific limitation that "any claim based upon injury to persons or property" must be made within 60 days of the underlying occurrence. The reference to "any claim" is part of the same sentence as the prior language discussing "ordinary claims," and it most naturally reads as modifying "ordinary claims." Accordingly, the 60-day limitation of MCL 124.419 applies to "any" ordinary claims brought against the transportation authority that arise out of injury to persons or property.

While the term "ordinary claims" is undefined by statute, it may reasonably be understood to include traditional tort claims arising out of occurrences involving a common carrier through which such injury is sustained.[17] This understanding corresponds with the purpose of the statute: to set forth the requirements by which a person may recover against a common carrier for its liabilities, which includes tort liabilities involving injury to persons or property. We also discern from the statutory text that these ordinary claims are to be paid from funds of the authority.

Contrary to this framework, an application for no-fault benefits is not an ordinary claim as contemplated by MCL 124.419. A claim for no-fault benefits is not a tort claim,

---

[16] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008); *Sun Valley*, 460 Mich at 236-237.

[17] See, e.g., *Trent v Suburban Mobility Auth for Regional Transp*, 252 Mich App 247; 651 NW2d 171 (2002), discussed later in this opinion.

9

nor is it comparable to one. In fact, no-fault systems are generally designed to *supplant* tort recovery in most situations. Moreover, claims for no-fault benefits are not paid from funds of the authority, as traditional tort claims are, but are paid by a carrier's no-fault insurer. The legislatively chosen language thus indicates that ordinary tort claims like those pursued by plaintiff here and to which MCL 124.419 applies are distinct from claims for other kinds of benefits, such as those provided by the no-fault act.

Apart from the textual indications supporting this analysis, we recognize that claims for first-party no-fault benefits and third-party tort benefits are qualitatively distinct in nature, such that notice of one does not serve as notice of the other. Most notably, an application for first-party insurance benefits *recoverable without regard to fault* cannot be equated with a claim for *at-fault* tort liability. First-party benefits under the no-fault act are creations of, and thus only available pursuant to, statutory law. And SMART's insurer is *required* to pay no-fault personal protection insurance benefits to individuals injured in accidents involving their buses.[18] A person who proves his entitlement to first-party benefits has proved none of the elements that would entitle him to tort damages. A third-party tort claim is distinct from a claim for first-party benefits because a third-party tort claim involves an adversarial process in which the plaintiff must prove fault in order to recover. Therefore, notice of a claim for first-party benefits is not the equivalent of notice of a third-party tort claim.[19]

---

[18] See MCL 500.3105(1).

[19] Not even the dissent here disagrees with this construction and conclusion.

10

The decision of the Court of Appeals in *Trent v Suburban Mobility Auth for Regional Transp* is instructive. In *Trent*, the Court of Appeals examined whether a claimant seeking first-party no-fault benefits was required to meet the 60-day notice requirement of MCL 124.419. The Court held that MCL 124.419 does *not* apply to claims for no-fault benefits, but does apply to third-party claims for personal injury.[20] The Court reasoned that MCL 124.419 contemplates claims brought as "ordinary claims against a common carrier," whereas a no-fault claim is statutory and unrelated to SMART's status as a common carrier. Thus, the plaintiff in *Trent* did not have to provide notice of her no-fault claim within 60 days under MCL 124.419 to be entitled to no-fault benefits because the statute was inapplicable to that *type* of benefit sought.[21]

*Trent* appropriately held that the 60-day window to file notice of an ordinary claim in MCL 124.419 does not apply or limit a plaintiff's ability to bring a no-fault claim for benefits. While this case presents the converse factual situation in which plaintiff argues that notice of a no-fault claim *is* sufficient to apprise a defendant of the required statutory notice of a tort claim, the *legal principle* remains the same: no-fault claims and fault-

---

[20] *Trent*, 252 Mich App at 251-252.

[21] While we cite with approval *Trent* in this regard, we specifically disavow the additional holding of *Trent* that a defendant must show actual prejudice in order to enforce a statutory notice provision. This Court has since held that when the Legislature specifically qualifies the ability to bring a claim against the state or its subdivisions on a plaintiff's meeting certain requirements that the plaintiff fails to meet, no saving construction—such as requiring a defendant to prove actual prejudice—is allowed, and overruled the contrary cases on which *Trent* relied in this regard. See *Rowland*, 477 Mich at 201; see also *McCahan*, ___ Mich at ___, slip op at 2, 16-17 (reaffirming the principle of *Rowland* and clarifying that it applies to other similar statutory notice provisions). Of course, this principle applies with equal force here.

based tort claims are qualitatively different. Thus, in *Trent*, a requirement that applies to ordinary tort claims did not apply to a claim for no-fault benefits, and here, a request for no-fault benefits does not apprise the defendant of the desire to pursue liability in tort.

The Court of Appeals erred to the extent that it held that plaintiff's no-fault claim and SMART's institutional knowledge essentially put SMART on notice of a likely at-fault claim. Ultimately, plaintiff's application for no-fault benefits in this case only asserted her right to, and demanded payment for, no-fault benefits. Plaintiff did not assert any right to recovery in tort or make a demand for tort damages within 60 days. The claim asserted in plaintiff's application for no-fault benefits was qualitatively different from a claim for recovery in tort and could not reasonably apprise SMART that plaintiff would pursue a tort action. Plaintiff's interpretation, and that of the Court of Appeals, essentially rewrites the statutory text to provide that notice of any one claim—however distinct—suffices as notice of any other claim that plaintiff may pursue even when the statute plainly requires "written notice of any claim."

Further, the Court of Appeals compounded this error by importing concepts of substantial compliance and SMART's institutional knowledge of the accident gleaned from other sources as sufficient to provide the notice required by MCL 124.419. The statute requires "written notice" of "claims," which must be "served" upon SMART. A "claim" is "a demand for something as due; an assertion of a right or an alleged right."[22] A claim is not merely an occurrence; it is a demand for payment pursuant to a legal right

---

[22] *Random House Webster's College Dictionary* (2000).

12

as a result of that occurrence.[23] The statute does not permit knowledge of facts that could give rise to a claim, as the Court of Appeals held, but rather it requires written notice of the claim itself. Knowledge of operative facts is not equivalent to written notice of a claim. Similarly, aggregate knowledge of an event such as an accident cannot be served on a defendant. Instead, the requirement that "written notice of any claim . . . shall be served *upon the authority*" indicates that a formal delivery of notice of the claim is intended by the statutory language.[24]

By providing that the accumulated information obtained by SMART from other sources, in addition to a no-fault application, substantially met the requirement that plaintiff provide written notice of her tort claims, the Court of Appeals replaced a simple and clear statutory test with a test based on apparent or imputed knowledge. The Court of Appeals' holding would require SMART and its counterparts to *anticipate* when a tort claim is likely to be filed on the basis of the underlying facts. In short, it would require a governmental agency to divine the intentions of an injured or potentially injured person and then notify itself that the person may file a suit in tort. This approach entirely subverts the notice process instituted by the Legislature. And the legislative purpose behind this process is clear: it requires specific statutory notice of any claim so that a common carrier defendant does not have to anticipate or guess whether a claim will be filed at some point in the future. Instead, the common carrier must simply be told of the claim within 60 days and through service of a notice. For these reasons, the decision of

---

[23] Black's Law Dictionary (8th ed).

[24] Emphasis added. See *Nuculovic v Hill*, 287 Mich App 58, 68; 783 NW2d 124 (2010).

the Court of Appeals contravenes the clear language of MCL 124.419 and must be reversed.[25]

## IV. CONCLUSION

Statutory notice requirements like the one at issue in this case must be interpreted and enforced as plainly written. The Legislature has determined that it will waive governmental immunity in cases of personal injury or property damage that occur in connection with a common carrier of passengers for hire only when written notice of the claim is served on the transportation authority within 60 days. Our opinion today enforces that legislative determination.

Because plaintiff did not comply with the notice requirement provided in MCL 124.419, that statute precludes her from maintaining her tort claims against SMART. Plaintiff's accident occurred on September 15, 2006. Plaintiff thus had 60 days, or until

---

[25] The dissent's argument here is precisely the same as the one made by the dissenting justice in *McCahan*, ___ Mich at ___, slip op at 2-7, 9-11 (MARILYN KELLY, J., dissenting), which itself substantively repeats the arguments made by the dissent in *Rowland*, 477 Mich at 248 (MARILYN KELLY, J., concurring in part and dissenting in part). In short, the dissent primarily disagrees with this Court's decision to enforce the language of MCL 124.419 and, in particular, the *Legislature's* designated consequence for failure to comply with the statutory notice requirement. Oddly, although this case is one of statutory construction, the dissent undertakes no effort whatsoever to interpret the *actual words* of the statute that we are charged with interpreting. Instead, once again the dissent relies on a nonexistent, often repudiated "judicial prejudice requirement" to avoid the effect of the statutory language. Rather than repetitively restating yet again that which has already been authoritatively explored in decisions of this Court, for a full discussion of these issues we refer to, and incorporate by reference, this Court's prior opinions repudiating the various arguments raised by the dissent. See *McCahan*, ___ Mich at ___, slip op at 17-22; *Rowland*, 477 Mich at 202-214. In accordance with these decisions, we continue to advance the simple constitutional notion that this Court lacks the authority to rewrite statutory language or otherwise avoid by judicial innovation the Legislature's dictates.

November 14, 2006, to serve notice of her tort claims on SMART. Plaintiff first raised her tort claims in a letter from her counsel sent to SMART on May 4, 2007. Thus, MCL 124.419 precludes her from maintaining those claims against SMART. Accordingly, we reverse the judgment of the Court of Appeals and remand this case for reentry of the circuit court's order granting partial summary disposition in favor of SMART.

Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

VIVIAN ATKINS,

      Plaintiff-Appellee,

v

No. 140401

SUBURBAN MOBILITY AUTHORITY
FOR REGIONAL TRANSPORTATION,
d/b/a SMART,

      Defendant-Appellant.

_____

MARILYN KELLY, J. (*dissenting*).

The issue presented in this case—whether plaintiff's failure to strictly comply with MCL 124.419's notice requirement mandates dismissal of her claim—is hardly novel. The majority takes this opportunity to perpetuate its restriction to access to our courts by holding, yet again, that failure to comply with a notice requirement requires dismissal of a suit. As I have detailed on several occasions, I would hold that statutory notice requirements are enforceable only to the extent that a defendant is prejudiced by a plaintiff's failure to comply. Because defendant in this case was not prejudiced by plaintiff's failure to comply, I respectfully dissent.

ANALYSIS

The proper interpretation and application of statutory notice provisions like MCL 124.419[1] have long occupied our courts. While early decisions of our Court strictly construed notice provisions and allowed dismissal for failure to comply,[2] the Court changed course in 1970 in *Grubaugh v City of St Johns*.[3] In *Grubaugh*, the Court dealt with a statutory provision that required a plaintiff to give a governmental defendant notice of a claim within 60 days of the incident underlying the lawsuit. The Court held that the provision violated the Due Process Clause of the state constitution.[4]

Two years later in *Reich v State Highway Department*, the Court extended *Grubaugh* and held that a statute that included a 60-day notice provision was

---

[1] MCL 124.419 provides, in relevant part:

> All claims that may arise in connection with the transportation authority shall be presented as ordinary claims against a common carrier of passengers for hire: Provided, That written notice of any claim based upon injury to persons or property shall be served upon the authority no later than 60 days from the occurrence through which such injury is sustained . . . .

I agree with the majority's conclusion that this provision requires potential claimants to notify the defendant of "any claim." Considering the language of the statute, an application for no-fault benefits is not the same as written notice of an impending tort action. However, as discussed later, I believe that notice of a request for no-fault benefits arising out of the same underlying facts may be sufficient notice of an impending tort claim. I believe that a defendant would suffer no prejudice by the failure to file notice of the tort claim in these circumstances.

[2] See, e.g., *Davidson v City of Muskegon*, 111 Mich 454; 69 NW 670 (1897).

[3] *Grubaugh v City of St Johns*, 384 Mich 165; 180 NW2d 778 (1970).

[4] *Id*. at 176.

2

unconstitutional on equal protection grounds.[5]  We reasoned that the state and federal constitutions forbid treating those injured by governmental negligence differently from those injured by a private party's negligence.[6]

The next year, in *Carver v McKernan*,[7] the Court considered the application of a six-month notice provision in the Motor Vehicle Accident Claims Act.[8]  The Court somewhat retreated from *Grubaugh*'s and *Reich*'s holdings that statutory notice provisions are per se unconstitutional.  *Carver* held that the notice provision in that case was constitutional, and thus enforceable, but only if the plaintiff's failure to give notice prejudiced the party not receiving the notice.[9]  The Court opined that while some notice provisions may be constitutionally permitted, others may not be, depending on the purpose served by the notice requirement.[10]  The Court explained that if the notice provision served some purpose other than to prevent prejudice, it could be considered an unconstitutional legislative requirement.[11]

---

[5] *Reich v State Hwy Dep't*, 386 Mich 617, 623-624; 194 NW2d 700 (1972).

[6] *Id*.

[7] *Carver v McKernan*, 390 Mich 96; 211 NW2d 24 (1973).

[8] MCL 257.1118.

[9] *Carver*, 390 Mich at 100.

[10] *Id*.

[11] *Id*.

Three years later in *Hobbs v Department of State Highways*,[12] the Court reaffirmed the reasoning of *Carver*. Considering a 120-day notice requirement in the governmental tort liability act,[13] the Court held:

> The rationale of *Carver* is equally applicable to cases brought under the governmental liability act. Because actual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision, absent a showing of such prejudice the notice provision contained in [MCL 691.1404] is not a bar to claims filed [under the act].[14]

Thus, *Hobbs* continued to employ a prejudice standard when construing statutory notice provisions.

Twenty years later in *Brown v Manistee County Road Commission*,[15] the Court reconsidered the propriety of *Hobbs*. We concluded that the statute at issue in that case was unconstitutional, reasoning that we were "unable to perceive a rational basis for the county road commission statute to mandate notice of a claim within sixty days."[16] We further reasoned that there was no legitimate reason to subject some claimants to a 60-day notice period and others to a 120-day notice period.

Nonetheless, in 2007, four justices of the Court issued *Rowland v Washtenaw County Road Commission* and upended *Hobbs*, *Brown*, and their progeny as wrongly

---

[12] *Hobbs v Dep't of State Hwys*, 398 Mich 90; 247 NW2d 754 (1976).

[13] MCL 691.1401 *et seq*.

[14] *Hobbs*, 398 Mich at 96.

[15] *Brown v Manistee Co Rd Comm*, 452 Mich 354; 550 NW2d 215 (1996).

[16] *Id*. at 363.

decided.[17]  Those justices concluded that *Hobbs* and *Brown* had erroneously read actual prejudice requirements into statutory notice provisions and, in doing so, usurped the Legislature's power to mandate timely notice to defendants.  I dissented from the Court's decision to overrule *Hobbs* and *Brown*.  I opined that the Court did not need to reach the validity of those cases in deciding *Rowland* but that, in any event, they had been properly decided.  I stated:

> Even if it were proper to reach the 120-day notice requirement in this case, it would not be appropriate to overturn *Hobbs* and *Brown*. Together, these cases represent 30 years of precedent on the proper meaning and application of MCL 691.1404.  Such a considerable history cannot be lightly ignored.  And the Legislature's failure to amend the statute during this time strongly indicates that *Hobbs* and *Brown* properly effectuated its intent when enacting MCL 691.1404(1).

> The primary goal of statutory interpretation is to give effect to legislative intent.  In both *Hobbs* and *Brown*, the Court identified the intent behind the notice provision as being to prevent prejudice to a governmental agency.  [In *Hobbs*, the Court held that] [a]ctual prejudice to the state due to lack of notice within 120 days is the only legitimate purpose we can posit for this notice provision . . . .  For 20 years, the Legislature knew of this interpretation but took no action to amend the statute or to state some other purpose behind MCL 691.1404(1).  The Court then readdressed the statute in *Brown* and came to the same conclusion regarding the purpose behind MCL 691.1404(1).

> Another ten years have passed, but still the Legislature has taken no action to alter the Court's interpretation of the intent behind the statute. This lack of legislative correction points tellingly to the conclusion that this Court properly determined and effectuated the intent behind MCL 691.1404(1).  If the proper intent is effectuated, the primary goal of statutory interpretation is achieved.[18]

---

[17] *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 210-213; 731 NW2d 41 (2007).

[18]  *Id*. at 258-259 (MARILYN KELLY, J., concurring in part and dissenting in part) (quotation marks and citations omitted).

I continue to stand by my dissenting opinion in *Rowland* and believe that in toppling decades of settled caselaw, the Court acted improperly. I would hold, consistently with *Hobbs* and *Brown*, that preventing actual prejudice to a defendant because of lack of notice is the primary legitimate purpose of notice provisions.[19] Consequently, a suit may be dismissed for lack of notice only when a defendant has been prejudiced.

In this case, plaintiff failed to provide the notice of intent to bring a tort claim within the 60-day period required by MCL 124.419. Applying the reasoning of *Hobbs*, *Brown*, and my partial dissent in *Rowland*, I would hold that defendant was not prejudiced by this failure. This is apparent for several reasons.

First, following the bus collision underlying plaintiff's claim, defendant immediately investigated the accident on its own accord. It did not believe that plaintiff had sustained any serious injuries, but was nonetheless aware of the incident and of plaintiff's involvement. Defendant also obtained a statement from one of the bus drivers, a supervisor's accident investigation report, and a transit accident report, all within several days of the accident. Thus, defendant was cogently aware of the basis for plaintiff's claim and was not prejudiced by plaintiff's failure to file a notice of intent to sue.

---

[19] Rather than repeat my response to the majority's criticism of my position, I refer the reader to my dissenting opinion in *McCahan v Brennan*, ___ Mich ___; ___ NW2d ___ (August 20, 2012, Docket No. 142765) (MARILYN KELLY, J., dissenting), and *Rowland*, 477 Mich at 248 (MARILYN KELLY, J., concurring in part and dissenting in part).

Second, within 10 days of the accident, plaintiff advised defendant's insurer, ASU Group, that she had been injured in the collision. ASU Group provided her with an application for no-fault benefits, which she completed and returned. In her application, plaintiff explicitly noted her injuries that resulted from the accident as well as her health insurance information. She noted that her doctors had prescribed medication for her. She also provided a list of the physicians treating her and their contact information.

ASU Group contacted each of plaintiff's physicians and obtained her medical records related to the accident. ASU Group's notes on plaintiff's case indicate that it was aware that during plaintiff's convalescence, her mother and daughter performed household services for her. Its notes further reflect that with plaintiff's anticipated wage loss, treatment, and household services, she would not be able to cover her expected medical costs. Finally, defendant was aware that plaintiff's condition continued to worsen several weeks after the accident and that magnetic resonance imaging depicted disk herniations and degenerative changes in her spine. Thus, defendant was acutely aware of plaintiff's injuries and the factual basis for her tort claims.

This information that plaintiff provided to defendant and its insurer put defendant on notice of plaintiff's tort claims against it. This is not a case of a failure to substantially comply with a notice requirement. Indeed, plaintiff substantially complied with MCL 124.419 and, as the record indicates, defendant was well aware of the genesis of plaintiff's claims. Defendant was also fully apprised of all details relevant to plaintiff's suit by virtue of its insurer's active communication with plaintiff within the 60-day notice period. Accordingly, defendant suffered no prejudice when plaintiff did not give notice of her intent to pursue tort claims until several months after expiration of the 60-day

7

notice period. I reject the notion that slavish adherence to form must be shown in this case when the legislative purpose of the notice requirement was so clearly fulfilled.

## CONCLUSION

I would affirm the judgment of the Court of Appeals. I would hold that plaintiff's failure to provide notice within 60 days of the incident does not mandate partial summary disposition in favor of defendant. Rather, because defendant was not prejudiced by plaintiff's failure to file notice, this Court should remand her case to the trial court for further proceedings. Accordingly, I respectfully dissent.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway