# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

MELISSA MAYS, MICHAEL ADAM MAYS,
JACQUELINE PEMBERTON, KEITH JOHN
PEMBERTON, ELNORA CARTHAN, RHONDA
KELSO, and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs-Appellees/Cross-
        Appellees/Cross-Appellants,

v

GOVERNOR RICK SNYDER, STATE OF
MICHIGAN, MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY, and
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

        Defendants-Appellants/Cross-
        Appellees,

and

DARNELL EARLEY and JERRY AMBROSE,

        Defendants/Cross-
        Appellants/Cross-Appellees,

and

CITY OF FLINT,

        Not Participating.

FOR PUBLICATION
January 25, 2018

No.  335555
Court of Claims
LC No.  16-000017-MM

---

MELISSA MAYS, MICHAEL ADAM MAYS,
JACQUELINE PEMBERTON, KEITH JOHN
PEMBERTON, ELNORA CARTHAN, RHONDA
KELSO, and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs-Appellees,

-1-

v

GOVERNOR RICK SNYDER, STATE OF
MICHIGAN, MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY, and
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

        Defendants,

and

DARNELL EARLEY, and JERRY AMBROSE,

        Defendants-Appellants,

and

CITY OF FLINT,

        Not Participating.

No. 335725
Court of Claims
LC No. 16-000017-MM

MELISSA MAYS, MICHAEL ADAM MAYS,
JACQUELINE PEMBERTON, KEITH JOHN
PEMBERTON, ELNORA CARTHAN, RHONDA
KELSO, and ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs-Appellees,

v

GOVERNOR RICK SNYDER, STATE OF
MICHIGAN, MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY, and
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

        Defendants-Appellants,

and

DARNELL EARLEY and JERRY AMBROSE,

        Defendants,

and

No. 335726
Court of Claims
LC No. 16-000017-MM

CITY OF FLINT,

Not Participating.

---

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

RIORDAN, J. (*dissenting*)

I dissent.

In this consolidated appeal arising out of a putative class action suit brought by plaintiff water users and property owners in the city of Flint, Michigan, defendants appeal and plaintiffs cross-appeal the Court of Claims' opinion and order granting in part and denying in part defendants' motions for summary disposition. Because plaintiffs failed to comply with MCL 600.6431(3), the notice provision of the Court of Claims Act (CCA), MCL 600.6401 *et seq.*, I would reverse the trial court's order and remand with direction for the trial court to enter an order summarily disposing of all plaintiffs' claims and dismissing the case.

"We review de novo motions for summary disposition . . . [and] [q]uestions of statutory interpretation[.]" *Kline v Dep't of Transp*, 291 Mich App 651, 653; 809 NW2d 392 (2011). "When this Court interprets statutory language, our primary goal is to discern the intent of the Legislature as expressed in the text of the statute." *Grimes v Mich Dep't of Transp*, 475 Mich 72, 76; 715 NW2d 275 (2006). "Where the language is clear and unambiguous, our inquiry ends and we apply the statute as written." *Id.*

Governmental agencies in Michigan engaged in governmental functions are generally immune from tort liability. *Kline*, 291 Mich App at 653. It is "the sole province of the Legislature to determine whether and on what terms the state may be sued[.]" *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). Consequently, "because the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed." *Id.* at 736. This Court in *Rusha v Dep't of Corrections*, 307 Mich App 300, 307; 859 NW2d 735 (2014), held that the Legislature is permitted to "impose reasonable procedural requirements, such as a limitations period, on a plaintiff's available remedies even when those remedies pertain to alleged constitutional violations." Considering that the Legislature has the sole power to impose such restrictions, "the judiciary has no authority to restrict or amend those terms." *McCahan*, 492 Mich at 732. Thus, "no judicially created saving construction is permitted to avoid a clear statutory mandate." *Id.* at 733. When the language of a limiting statute is straightforward, clear, and unambiguous, it must be enforced as written. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007).

"One such condition on the right to sue the state is the notice provision of the Court of Claims Act, MCL 600.6431." *McCahan*, 492 Mich at 736. That notice provision, in pertinent part, states:

(1)  No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

*  *  *

(3)  In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action. [MCL 600.6431.]

The Michigan Supreme Court has been clear that the judiciary is not permitted to "reduce the obligation to comply fully with the statutory notice requirements." *McCahan*, 492 Mich at 746-747.  It is well established that MCL 600.6431 "is an unambiguous condition precedent to sue the state, and a claimant's failure to strictly comply warrants dismissal of the claim, even if no prejudice resulted[.]" *Rusha*, 307 Mich App at 307 (internal quotation marks and citations omitted).  Michigan appellate courts have consistently held that "the Legislature may impose reasonable procedural requirements, such as a limitations period, on a plaintiff's available remedies even when those remedies pertain to alleged constitutional violations." *Id.*  Despite the Michigan Supreme Court's proclamation that courts are not permitted to "reduce the obligation to comply fully with statutory notice requirements," *McCahan*, 492 Mich App at 746-747, this Court in *Rusha* indicated, in dicta, that there was an exception to the enforcement of the notice provision "where it can be demonstrated that [such provisions] are so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." *Rusha*, 307 Mich App at 311 (internal citations and quotation marks omitted).

Plaintiffs assert, and the Court of Claims agreed, that they should be excused from the strict requirements of MCL 600.5431(3) because the enforcement of that statute would be "so harsh and unreasonable in [its] consequences that [it would] effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." *Id.* at 311 (internal quotation marks omitted).  First, I am not convinced that the application of the strict requirements of the notice provision in this case should be considered "harsh" or "unreasonable" considering the sequence of events that took place leading up to plaintiffs' filing of the instant litigation and the number of overlapping lawsuits previously filed concerning this matter.

As discussed, *infra*, plaintiffs had numerous indications that they were suffering harm within six months of the water source switch and so could have reasonably filed their notice of intent in a timely manner.  Even construing the notice provision of the CCA and *Rusha* in a manner most beneficial to plaintiffs, that law does not establish that harsh and unreasonable consequences would result unless a court held that a claim accrues and the notice period begins to run when the alleged wrongdoer publically, and clearly, admits that it acted improperly.

-4-

Further, any action by defendants in attempting to cover their errors does not change the fact that there were abundant events, unrelated, and temporally prior, to defendants' cover-up, that should have alerted plaintiffs to their potential claims. In fact, plaintiffs' pleadings show that those events, or red flags, did alert plaintiffs of their potential claims.

Second, to the extent that this Court in *Rusha* may have attempted to create, whether as dicta or otherwise, a "harsh and unreasonable" consequences exception to MCL 600.6431(3), that Court was barred from doing so by the Michigan Supreme Court in *McCahan*, 492 Mich at 733. In *McCahan*, the Court clearly and unequivocally held that the notice requirements found at MCL 600.6431 "must be interpreted and enforced as plainly written and that *no judicially created saving construction is permitted to avoid a clear statutory mandate.*" *Id*. (emphasis added). This Court, in both *Rusha* and now in the present appeal, are "duty-bound to follow [the Michigan Supreme Court's] construction" of MCL 600.6431 found in *McCahan*. *Rowland*, 477 Mich at 202. Quite frankly, if the Legislature had intended the notice provision to be potentially excused by the possibility of harsh and unreasonable consequences, it would have written that into the statute. It chose not to do so, and as the law now stands, there is no such exception. As such, in the instant matter, the majority errs, and the Court of Claims erred, in judicially creating one. See *id*.; see also *McCahan*, 492 Mich at 733.

Plaintiffs also assert that the notice provision in MCL 600.6431 should have been tolled due to defendants' alleged fraudulent concealment. Because the plain language of MCL 600.6431 unambiguously establishes that the Legislature did not intend to have the notice period tolled in such a manner, I disagree. The fraudulent concealment exception is a legislatively-created exception to statutes of limitation and does not apply to the notice provision at issue. The statute of limitations tolling exception is codified as part of the Revised Judicature Act (RJA), MCL 600.101 *et seq*., in MCL 600.5855, which states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

This statutory section permits the tolling of a statutory limitations period for two years if the defendant has fraudulently concealed the existence of a claim. *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996).

The Legislature, in crafting the CCA, imported the fraudulent concealment exception into its statute of limitations provision. MCL 600.6452(2). In pertinent part, MCL 600.6452, which deals with the "[l]imitation of actions," provides that "the provisions of RJA chapter 58, relative to the limitation of actions, shall also be applicable t*o the limitation prescribed in this section*." MCL 600.6452(2) (emphasis added). The notice provision of the CCA does not contain a similar clause. See MCL 600.6431. The language provided in MCL 600.6452(2) clearly delineates that it is *only* to apply to the section on limitations. Statutes of limitation and notice requirements are not the same thing. *Rusha*, 307 Mich App at 311-312. By incorporating the

fraudulent concealment exception from the RJA into the notice requirement of the CCA, the majority ignores the clear intent expressed by the Legislature that such provisions of the RJA applied only "to the limitation prescribed in" MCL 600.6452 – the CCA's statute of limitations section. Given that the "statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Ronnisch Constr Group v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

Thus, considering that plaintiffs were not entitled to toll or except themselves from the statutory notice period found in the CCA, it is next necessary to consider whether plaintiffs' claims complied with MCL 600.6431(3). Because they did not, I would reverse.

Plaintiffs argue, and the Court of Claims and majority agree, that there were questions of fact regarding when plaintiffs' claims accrued, so summary disposition was premature. I disagree. It is undisputed that plaintiffs did not file a separate notice of intent before filing the instant litigation. Instead, plaintiffs filed the instant claim on January 21, 2016. Therefore, in order to have complied with the notice provision of the CCA, MCL 600.6431(3), "the happening of the event giving rise to the cause of action" must have occurred within six months of January 21, 2016. Which raises an interesting question the majority failed to consider: What is "the happening of the event" in the context of the CCA notice provision? Notably, MCL 600.6431(1) (emphasis added), provides that "[n]o claim may be maintained against the state unless the claimant, *within 1 year after such claim has accrued*, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim[.]" Meanwhile, MCL 600.6431(3) provides for a shorter time to file a written claim or notice thereof when the action is one "for property damage or personal injuries." However, instead of using the term "accrued" for describing when the notice clock begins to run, MCL 600.6431(3) uses the phrase "the happening of the event giving rise to the cause of action."

In *McCahan*, 492 Mich at 738, the Michigan Supreme Court addressed an issue involving subtle differences in language between subsections (1) and (3) of MCL 600.6431. Specifically, the plaintiff in that case argued that "her claim, being a claim for personal injury, is not subject to the dictates or bar-to-claims language of MCL 600.6431(1)." The Court held that "subsection (3) must be read in light of subsection (1)[.]" *McCahan*, 492 Mich at 738. The Court provided the following reasoning:

> When undertaking statutory interpretation, the provisions of a statute should be read reasonably and in context. Doing so here leads to the conclusion that MCL 600.6431 is a cohesive statutory provision in which all three subsections are connected and must be read together. Subsection (1) sets forth the general notice required for a party to bring a lawsuit against the state, while subsection (3) sets forth a special timing requirement applicable to a particular subset of those cases—those involving property damage or personal injury. Subsection (3) merely reduces the otherwise applicable one-year deadline to six months. In this regard, subsection (3) is best understood as a subset of the general rules articulated in subsection (1), and those general rules and requirements articulated in subsection (1)—including the bar-to-claims language—continue to apply to all claims brought against the state unless modified by the later-stated specific rules. [*Id.* at 739 (footnote omitted).]

-6-

In sum, the Court concluded that "the only substantive change effectuated in subsection (3) is a reduction in the timing requirement for specifically designated cases." *Id*. at 741. Stated differently, "subsection (3) . . . does not [] displace the specific requirements of subsection (1) other than the timing requirement for personal injury or property damage cases." *Id*. at 742 (emphasis omitted).

Considering the Court's reasoning and conclusion in *McCahan*, it is only logical to hold that the phrase "the happening of the event giving rise to the cause of action" used in subsection (3) means the same thing as "accrued" used in subsection (1). After all, if the phrase was interpreted differently, such an interpretation would run afoul of the Michigan Supreme Court's holding that "the only substantive change effectuated in subsection (3) is a reduction in the timing requirement for specifically designated cases." *Id*. at 741. Thus, in order to determine if plaintiffs' claim being filed on January 21, 2016, satisfies MCL 600.6431(3), it is necessary to determine when plaintiffs' claims accrued. See *id*.

Notably, the CCA does not define when a claim accrues. For the reasons discussed when deciding that the fraudulent concealment provision of the RJA should not apply to the notice provision of the CCA, I believe it would be inappropriate to adopt the definition of "accrued" from that same set of statutes. See MCL 600.5827 (establishing that a "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."). Instead, it would be far more prudent to adopt the definition of "accrued" used by this Court in *Cooke Contracting Co v State*, 55 Mich App 336, 338; 222 NW2d 231 (1974), citing *Oak Constr Co v State*, 33 Mich App 561; 190 NW2d 296 (1971), which provided that "a claim accrues only when suit may be maintained thereon." It only stands to reason that a "suit may be maintained" when a plaintiff knows, or should know, about a potential claim. See *Cooke Contracting Co*, 55 Mich App at 338.[1] This, however, is not to say that plaintiffs are permitted to wait to discover the full range of wrongs and harms committed by defendants before plaintiffs' claims accrued. The Michigan Supreme Court has been clear that "[a]dditional damages resulting from the same harm do not reset the accrual date or give rise to a new cause of action." *Frank v Linkner*, 500 Mich 133, 155; 894 NW2d 574 (2017). In sum, if plaintiffs first knew or had reason to know of their potential claims against defendants on or after July 21, 2015, then their notice was timely and their claims are permitted. MCL 600.6431(3). If the accrual date fell anywhere before July 21, 2015, plaintiffs failed to comply with MCL 600.6431(3) and their claims must be dismissed. See *McCahan*, 492 Mich App at 742.

Given that the Court of Claims considered this motion before discovery, this Court must rely on the well-pleaded facts in plaintiffs' pleadings. In examining those facts attested to by plaintiffs, it is clear that plaintiffs had reason to know that they had suffered harm due to defendants' actions, and therefore their claims accrued, well before July 21, 2015. The amended complaint provides that a study commissioned by the city of Flint was published in 2011 and

---

[1] I note that the Court of Claims has reached a similar conclusion. See *Gulla v Snyder*, unpublished opinion of the Court of Claims, issued September 13, 2017 (Docket No. 16-000298-MZ), pp 3-6.

"cautioned against the use of the Flint River water and the dormant Flint Water Treatment Plant[.]" The original complaint clarified that "the report stated that the water from the Flint River was highly corrosive and could not be used safely without an anti-corrosive agent to prevent lead, copper and other heavy metals from leaching into the water[.]" Despite that report, on April 25, 2014, "Flint water users began receiving Flint River water from their taps[.]" In their amended complaint, plaintiffs identify their class as "Flint water users . . . who, since April 25, 2014, were and continue to be injured in person and property because they were exposed to highly dangerous conditions[.]" Subsequently, "[i]n June 2014, citizen complaints about contaminated water continued," with "[m]any Flint water users report[ing] that the water was making them ill." The amended complaint acknowledged that, "[o]n October 13, 2014, the General Motors Corporation announced that it would no longer use Flint River water in its Flint plant." Plaintiffs referred to that move by GM as "clear evidence of serious and significant danger[.]" In January of 2015, a Flint homeowner contacted the EPA regarding the water, informing the federal agency "that she and her family members were becoming physically ill from exposure to the Flint River water coming from her tap." "On February 17, 2015, Flint water users staged public demonstrations demanding that Flint re-connect with DWSD[.]" According to the amended complaint, the "Flint City Council voted to re-connect to Detroit's water system" on March 25, 2015.

Plaintiffs also provide additional details in their original complaint that are helpful to this analysis. The original complaint notes that Flint water failed tests administered by the EPA shortly after the switch due to elevated levels of Trihalomethanes (TTHM), a known carcinogen. In August 2014, the water tested positive for *E. coli*. Flint issued "boil water" advisories in September of 2014. Plaintiffs then alleged that for the eight months following the switch, or until December 25, 2014, "Flint water users, including Plaintiffs and/or Plaintiff Class members, expressed their concerns about water quality in multiple ways, including letters, emails and telephone calls to Flint and MDEQ officials, the media and through well publicized demonstrations on the streets of Flint." In January of 2015, plaintiffs "received a notice . . . stating that the water was not in compliance with the federal Safe Drinking Water Act because of unlawful levels of TTHMs." The complaint asserted that "[o]n January 20, 2015, citizen protests mounted[,] fueled in part by encouragement from environmental activist Erin Brokovich and her associate, water expert Bob Bowcock." Plaintiffs alleged that those purported experts "offered advice and assistance to the protesting Flint water users due to the serious concerns about the health risks they presented by this toxic water."

The original and amended complaints provide that, after July 21, 2015, additional events occurred regarding governmental response to the allegedly toxic water. In August of 2015, Dr. Mona Hanna-Attisha, a pediatrician, published a study that "noted and disclosed a dramatic and dangerous spike in elevated blood lead levels in a large cohort of Flint children corresponding with the time of exposure to the highly corrosive Flint River water." Although she published that report in August of 2015, she based it on data she accumulated from "blood drawn [from Flint children] in the second and third quarter of 2014." In September of 2015, Professor Marc Edwards issued a report that revealed lead in the water supply and that "the Flint River water was 19 times more corrosive than the water pumped . . . by the Detroit water system." On October 8, 2015, Governor Snyder acknowledged that the Flint water was toxic and unsafe, and on October 16, 2015, "Detroit city water began to flow to Flint water users."

Plaintiffs' claims clearly accrued before July 21, 2015. Prior to that date, it was public knowledge that Flint water users had been switched over to water from the Flint River as of April 25, 2014. The original and amended complaints are rife with statements establishing that from the moment the water was switched, residents indicated that there was something wrong with the water, that it was making them feel ill, and that it looked and smelled foul. Specifically, plaintiffs' pleadings provided that for the eight months following the switch, Flint residents complained "about water quality in multiple ways, including letters, emails and telephone calls to Flint and MDEQ officials, the media and through well publicized demonstrations on the streets of Flint." Indeed, before 2014 ended, Flint issued a "boil water" advisory regarding bacteria in the water, Dr. Hanna-Attisha discovered that children in Flint showed "a dramatic and dangerous spike in elevated blood lead levels," and GM "announced that it would no longer use Flint River water in its Flint plant." Plaintiffs in their pleadings stated that GM's decision was "clear evidence of serious and significant danger[.]" The residents' complaints of feeling ill and Dr. Hanna-Attisha's data established that plaintiffs' purported class was undisputedly suffering harm before 2014 ended. Further, plaintiffs should have known of the potential claim, considering that there were "well publicized" public demonstrations occurring and GM had acted in a manner that revealed "clear evidence of serious and significant danger[.]" Although plaintiffs may have become better informed regarding the specific harms suffered after 2014, and damages arising therefrom, those more recently discovered harms did "not reset the accrual date or give rise to a new cause of action." *Frank*, 500 Mich at 155. Thus, by the end of 2014, plaintiffs knew or should have known that they and their property were being harmed by defendants' decision to use water from the Flint River. See *Cooke Contracting Co*, 55 Mich App at 338.

Even giving plaintiffs the benefit of the doubt and observing the events of 2015, plaintiffs' pleadings clearly establish that July 21, 2015, was far past any date when plaintiffs knew or should have known of their claims. In January of 2015, the residents of Flint held a public demonstration where notable public figures were present, and the complaint alleges that those public figures expressed their belief that the water was toxic and harmful. In that same month, Flint residents received a notice in the mail stating that their drinking water was not compliant with federal standards due to the presence of TTHMs. Plaintiffs also allege that a Flint resident called the EPA in January of 2015 to specifically express that the water was making her and her family ill. Another public demonstration took place in February of 2015. In March of 2015, responding to concerns regarding the water, the Flint City Council publically voted to re-connect to the Detroit water system. All of these facts alleged by plaintiffs plainly support the conclusion that plaintiffs knew or should have known of their claims well before July 21, 2015.

Finally, I would take judicial notice of complaints filed against Flint in Genesee County Circuit Court, LC No. 15-101900-CZ, and the United States District Court for the Eastern District of Michigan, LC No. 2:15-cv-12084-SJM-DRG.[2] In those cases, both filed before July

---

[2] This Court is permitted to take judicial notice of public records. *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015), citing MRE 201; see also

21, 2015 – on June 5, 2015, and July 6, 2015, respectively – the plaintiff, Coalition for Clean Water, alleged that the residents of Flint had been denied their "basic and human right to clean drinking water – free of contamination," and that "usage of the Flint River as a primary source of drinking water has and continues to pose a major and serious threat to the health, safety and welfare of the residents of the City of Flint[.]" The complaints relied on many of the same facts as the present case, including that the water failed EPA tests, Flint issued notices of that failure, public demonstrations had been conducted involving Erin Brokovich, and GM had switched water sources. Melissa Mays, the lead plaintiff in the instant case, signed both of those complaints after attesting that she had "read the foregoing complaint and [declared] that statements contained therein are true to the best of [her] knowledge, information and belief[.]"

Thus, by the very latest possible date, July 6, 2015, plaintiffs knew or should have known that they and their property were being harmed by defendants' decision to use water from the Flint River. See *Cooke Contracting Co*, 55 Mich App at 338. They specifically acknowledged that they were aware of the possibility of such a claim by taking the affirmative step to file lawsuits in other courts. Therefore, their complaint filed on January 21, 2016 – more than six months after any reasonably possible, and actually occurring, accrual date – did not satisfy the strict requirements of the CCA's notice provision. MCL 600.6431(3). Consequently, all of plaintiffs' claims are barred and summary disposition should have been entered in favor of defendants in the Court of Claims. *McCahan*, 492 Mich App at 742.

I am cognizant of the fact that the statutory notice provision of the CCA as applied in this case creates what plaintiffs have characterized as a harsh result. The harshness of that result, however, lies partially at the feet of plaintiffs. As discussed, *supra*, within six months of the switch from Detroit water to Flint River water, it was publically known that something was wrong with the water and it was making people sick. The public generally was aware of this danger especially after GM, within six months of the switch, moved back to Detroit water due to concerns regarding the corrosive nature of the Flint River water. Thus, within six months of the change, the residents of Flint were aware that the Emergency Manager, who was appointed by Governor Snyder and answerable only to state officials, made the decision to switch water sources, and that the new water was corrosive to metal and making people sick. In other words, the Flint residents knew that Michigan officials were involved in the decision to obtain water from the Flint River and suspected that the water was causing harm.

Plaintiffs have not, and likely cannot, explain why they did not file the notice of intent to file a claim at that moment. Any argument that they did not have enough information to actually sustain a claim against defendants due to their alleged fraudulent concealment is not persuasive. The notice requirement of the CCA does not require that a complaint be filed within six months of the claim accruing, it only requires that "a notice of intention to file a claim . . . stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained[.]" MCL 600.6431. That notice of

---

*Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 73; 858 NW2d 751 (2014).

intent would not have been held to the more demanding requirements of a complaint pursuant to MCR 2.111(B), would not have been subject to a motion for summary disposition pursuant to MCR 2.116(C)(8) for failure to state a claim for which relief could be granted, and would not have been subject to a motion for sanctions for the filing of a frivolous complaint due to plaintiffs' alleged lack of adequate information to sustain such a complaint at that time pursuant to MCR 2.114(F). In sum, there was little risk involved in filing a notice of intent pursuant to MCL 600.6431(3).

Had the notice of intent been filed in a timely manner, which "is a minimal imposition, especially considering that § 6431 allows the filing of statutory notice in lieu of filing an entire claim[,]" *Rusha*, 307 Mich App at 310, plaintiffs then would have had the benefit of the entire three-year statute of limitations of the CCA. MCL 600.6452(1). Thus, plaintiffs would not have had to file a complaint the instant action until, at the earliest, April 25, 2017, which was three years after the switch occurred. By that time, plaintiffs, according to their arguments, would have been fully aware of the factual circumstances and alleged deceit by defendants. Furthermore, because they would then be dealing with the statute of limitations instead of the notice provision, they would have had the benefit of asserting that the limitations period had been tolled due to defendants' fraudulent concealment. MCL 600.6452(2); MCL 600.5855. Consequently, had plaintiffs been reasonably diligent in their attempts to comply with the notice provision of the CCA, any claimed inequitable results required in this case could have been entirely avoided.

Even so, it is not within this Court's power to cure legislation of what a party may believe to be inequitable results. See *Menard Inc v Dep't of Treas*, 302 Mich App 467, 472; 838 NW2d 736 (2013) ("When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so[.]"). Furthermore, as the Michigan Supreme Court succinctly stated:

> . . . [O]ur judicial oaths require judges to enforce the *Legislature's* policy choices, even when we may personally find the outcome in a given case "unjust," "inequitable," "jarring," "hyper-technical," or contrary to what we intuit an "average person's" sensibilities to be. As this Court has stated, it is a mere "caricature" of judicial restraint for a judge "to assert that her common sense should be allowed to override the language of the statute."

> . . . [O]ur judicial duty is more than to "almost always" apply a statute's unambiguous words to the facts presented. The law must always guide the outcome, regardless of whether a judge perceives that outcome in a given case to be formalistic or "inequitable."

> This Court has prided itself on its commitment to the rule of law, and in particular a return to fundamental constitutional principles regarding judicial interpretation of statutes. This has been true even where, as a personal matter, a Justice may be discomforted by the ultimate result. But in a government characterized by the separation of powers, the people of this state elect judges to enforce the law as the political branches of our government have given it to us.

The rule of law requires a judge to be subservient to the law itself, not the law to be subservient to the personal views of a judge. [*Progressive Mich Ins Co v Smith*, 490 Mich 977, 979-980; 806 NW2d 494 (2011) (Young, C.J., concurring) (footnotes omitted).]

Furthermore, even though the proper application of the notice provision in the instant case would have resulted in, what plaintiffs characterize as, harsh consequences, I am not unaware of the fact that the residents of Flint are not left entirely without remedies. In the United States District Court for the Eastern District of Michigan, certain Flint water users have survived summary judgment on their "substantive due process bodily integrity" claims against Flint, the emergency managers Earley and Ambrose, as well as several other individual actors. *Guertin v Michigan*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued June 5, 2017 (Docket No. 16-cv-12412). An appeal of that decision is currently pending before the United States Sixth Circuit Court of Appeals. In an opinion staying the District Court proceedings pending the outcome of the appeal, the Court noted that plaintiffs sought to amend their complaint to allege a class-action suit against city, state, and individual defendants. *Guertin v Michigan*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued October 30, 2017 (Docket No. 16-cv-12412). Furthermore, a class action with Mays as the lead plaintiff was filed against state officials, along with others, was removed to the Eastern District after originally being filed in state court. That case was consolidated with other class action suits in federal court. *Mays v Snyder*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued August 14, 2017 (Docket No. 17-cv-10996). The *Mays* opinion indicated that the Eastern District had "consolidated all other pending Flint water class-action litigation as a single suit in *Waid v. Snyder*, Case No. 16-cv-10444." *Id*. Finally, there is also a "state-law professional negligence proposed class action suit" on behalf of the Flint water users, against "civil engineering companies responsible for upgrading Flint's municipal water system." *Mason v Lockwood, Andrews, & Newman, PC*, 842 F 3d 383, 385-386 (CA 6, 2016). The Sixth Circuit remanded that case back to state court pursuant to the local controversy exception to the Class Action Fairness Act. *Id*. at 386.

While this is by no means an exhaustive list of the multitude of claims that have arisen from the Flint water crisis, it exhibits that, despite the results required by strict application of MCL 600.6431(3), plaintiffs and their purported class are not left without a remedy.[3]

I would reverse and remand for entry of summary disposition in favor of defendants of all of plaintiffs' claims.

/s/ Michael J. Riordan

---

[3] A review of public records shows that in Federal Court alone there have been approximately 50 individual lawsuits and seven class action lawsuits filed arising out of the Flint water crisis.